## STATE OF CONNECTICUT *v.* HECTOR SILVA
(13935)

Schaller, Spear and Daly, Js.

Argued September 18—officially released November 5, 1996

*Susan F. Filan,* for the appellant (defendant).

*Lisa Herskowitz*, deputy assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *Warren Maxwell*, assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a). He claims that the trial court improperly (1) instructed the jury on self-defense, (2) denied him his statutory right to a speedy trial, and (3) denied him his federal and state constitutional rights to a speedy trial. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. The defendant resided with his family in a fourth floor apartment at 9-11 Wyllys Street, a multiunit apartment building in Hartford. On January 30, 1993, at approximately 11 p.m., Javier Ortiz and Christopher May entered 9-11 Wyllys Street, unarmed, intending to discuss a previous altercation between the defendant and Gene Hilton, a gang member. The previous altercation did not cause the defendant to fear for his life or the lives of his family members. The defendant, while standing on the second floor landing, opened fire as Ortiz and May entered the building. A bullet entered Ortiz' back and fatally wounded him. After the shooting, the defendant handed the gun to someone in the hallway, returned to his apartment, changed his clothing, and watched television with Johnny LeBrun and Felix Rodriguez. The police arrested the defendant that evening and never recovered the gun.

At trial, it was not disputed that the defendant shot Ortiz. The defendant claimed self-defense and testified

as follows. Gang members had been selling drugs in his apartment building, and he had been directed by the landlord to eject them from the building. Approximately one month prior to the shooting, gang members had pistol-whipped him in his apartment in the presence of his wife and children. Earlier on the evening of the shooting, he had argued with and was assaulted by Hilton outside of his apartment building. Hilton then threatened to return with more gang members to kill the defendant's family. The defendant ran to his apartment, warned his wife and instructed her to lock the door. He picked up a handgun and left his apartment, accompanied by Rodriguez.[1] He saw four people in the foyer, and ten to fifteen people standing outside, carrying bottles and sticks, but did not see anyone carrying a gun. As he reached the second floor landing of his building, he heard a gunshot and then fired his own gun two or three times.

## I

The defendant claims that the trial court improperly instructed the jury on self-defense.[2] He first asserts that

---

[1] The defendant was tried with codefendant Rodriguez. Rodriguez has filed a separate appeal.

[2] The trial court instructed the jury: "This, then, brings us to self-defense, or the defense referred to in the law as justification. The defendants . . . have raised self-defense as a justification for the use of force on January 30, 1993, at the Wyllys Street apartment building. That is, defense of themselves and others—family. The defense of self-defense is established in our law, or I should perhaps say, the defense of justification that is, self-defense, is established in our law by General Statutes § 53a-19, entitled 'Use of Physical Force in Defense of Person.' It reads, in pertinent part, as follows: 'A person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force. And he may use such degree of force which he reasonably believes to be necessary for such purpose, except that deadly physical force may not be used unless the actor reasonably believes that such other person is one, using or about to use deadly physical force, or two, inflicting or about to inflict great bodily harm. . . . *A person is not justified in using deadly physical force upon another person if he knows he can avoid the necessity of using such force with complete safety*

the trial court improperly instructed the jury that the common areas of his apartment building did not constitute his dwelling and, second, that the charge on the duty to retreat was incomplete and misleading. We disagree.

Due process requires that a defendant charged with a crime must be afforded the opportunity to establish a defense. *State* v. *Anderson,* 227 Conn. 518, 526, 631 A.2d 1149 (1993). "This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." (Internal quotation marks omitted.) Id. "[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Panella,* 43 Conn. App. 76, 79–80, 682 A.2d 532 (1996). "While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient

by retreating, except that the actor shall not be required to retreat if he is in his dwelling.'

" 'Dwelling' is defined in the statute as meaning a building which is usually occupied by a person, lodging therein at night, whether or not the person is actually present. 'Building,' however, is defined as having its ordinary meaning, but where a building consists of separate units, such as separate apartments, each such unit is a separate building. *So that with respect to [the defendant], his dwelling would be the particular apartment which he had the exclusive right to occupy, and would not include hallways, foyers and areas of the building which were open to others—which others had a right to use, such as the front entranceway, the front foyer."* (Emphasis added.)

for the guidance of the jury." (Internal quotation marks omitted.) Id., 80.

In his request to charge, the defendant asked the court to instruct the jury that "if you find that [the defendant] lived in 9-11 Wyllys Street the law provides that he had no duty to retreat." The court, however, instructed the jury that the defendant's "dwelling would be the particular apartment which he had the exclusive right to occupy, and *would not include hallways, foyers and areas of the building which were open to others*—which others had a right to use, such as the front entranceway, the front foyer." (Emphasis added.)

Section 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, *except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100* . . . ." (Emphasis added.) General Statutes § 53a-100 (a) (2) defines a dwelling as "a building which is usually occupied by a person lodging therein at night . . . ." A building is defined as a "structure . . . or any building with a valid certificate of occupancy. Where a building consists of separate units, such as, but not limited to separate apartments . . . any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . ." General Statutes § 53a-100 (a) (1). The success of the defendant's claim is dependent on whether the common areas of his apartment building are a part of his "dwelling" within the meaning of § 53a-19 (b).

The defendant asserts that the common areas of his apartment building are a part of his dwelling, and, thus, he had no duty to retreat. He has failed, however, to cite any authority in support of this proposition. Our appellate courts have not decided this issue in constru-

ing the self-defense statute, but in a similar context, our Supreme Court held that where an individual does not have the exclusive right to use, control access to or exclude others from an area in an apartment building, that area is not part of his residence or abode. *State* v. *Sealy*, 208 Conn. 689, 694, 546 A.2d 271 (1988).

In *Sealy*, the defendant was convicted of carrying a dangerous weapon in violation of General Statutes § 53-206 (a). Sealy argued that the trial court improperly instructed the jury to find Sealy guilty "if it found the defendant 'had the knife outside of his apartment in a common area.' " Id., 692. Sealy argued that he had exclusive control over the landing and stairway between the second and third floors, and, thus, that portion of the building was part of his dwelling. The court, however, disagreed and found that "although the defendant may have been the principal user of the third floor landing and stairway, other individuals, however infrequent their use, also had a right to use that area. . . . This being the case . . . the stairway and landing which led to the defendant's apartment were not part of his residence or abode." (Citation omitted.) Id., 694.

Although the self-defense statute was not at issue in *Sealy*, the court's reasoning as to whether a common area is part of a dwelling is equally applicable to this case.[3] In this case, the defendant's use of deadly force occurred on the second floor landing, an area of the building over which he clearly did not have exclusive control. Accordingly, we hold that the dwelling exception to the duty to retreat rule does not encompass the common areas of the defendant's apartment building

---

[3] General Statutes § 53-206 (a) does not expressly provide an exception for carrying a dangerous weapon in one's home. Our Supreme Court has noted, however, that "[i]mplicit in this provision is an exception for carrying a weapon in an individual's residence or abode . . . ." *State* v. *Sealy*, supra, 208 Conn. 693.

such as stairways, hallways and foyers. Because the defendant was in a common area when he shot Ortiz, the trial court properly instructed the jury that he had a duty to retreat.

The defendant also contends that the charge given on the duty to retreat was improper. We disagree.

Section 53a-19 (b) provides that the defendant had a duty to retreat only if he could retreat "with *complete* safety." (Emphasis added.) "The statute requires *both* that a retreat in complete safety be available *and* that the defendant know of it." (Emphasis in original; internal quotation marks omitted.) *State* v. *Jones*, 39 Conn. App. 563, 570, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d 800 (1995). In this case, the trial court instructed the jury that because the defendant was not in his dwelling, he had a "duty to retreat, our self-defense statute requires . . . both that a retreat in complete safety be available, and that the defendant know of it."

The defendant first argues that *any* instruction on the defendant's duty to retreat exacerbated the trial court's improper instruction on the definition of a dwelling. This claim is without merit because the trial court's dwelling instruction was correct. The defendant also argues that the instruction was improper because the trial court should have instructed on a claimed objective component of the duty to retreat. The defendant has not cited any authority or provided any legal analysis in support of his position.[4] Because this claim is inadequately briefed, we decline to review it. *State* v. *Miranda*, 41 Conn. App. 333, 338, 675 A.2d 925, cert. granted on other grounds, 237 Conn. 932, 677 A.2d 1372

---

[4] The defendant's briefing of this issue consists of two sentences: "The law on duty to retreat is based upon a subjective-objective analysis. The jury must decide whether [the defendant] believed he could retreat with complete safety and whether his belief was reasonable."

(1996); *State* v. *Mozell*, 37 Conn. App. 574, 579–80, 657 A.2d 686, cert. denied, 234 Conn. 910, 660 A.2d 355 (1995).

## II

The defendant next claims that the trial court improperly deprived him of his statutory right to a speedy trial. We disagree.

General Statutes § 54-82m guarantees a defendant incarcerated in lieu of bond a statutory right to a speedy trial. The statute requires that the trial commence within eight months of arrest or the filing of the information, whichever occurs later. The information must be dismissed if trial is not commenced within thirty days of the filing of a speedy trial motion. Practice Book § 956C provides that certain time periods are excludable in computing the time in which the trial must commence.[5]

The defendant was arrested on January 31, 1993, and the first information was filed on February 1, 1993. A probable cause hearing was held from March 11 to March 16, 1993. The defendant filed a speedy trial motion pursuant to § 54-82m on December 20, 1993, and a hearing was conducted on January 12, 1994. At the hearing, the defendant requested the earliest possible trial date. In response, the court noted that there

---

[5] Practice Book § 956C provides that the following periods, inter alia, are excludable: "(a) . . . (4) the time between the commencement of the hearing on any pretrial motion and the issuance of a ruling on such motion . . . .

"(b) Any period of delay resulting from the absence or unavailability of the defendant, counsel for the defendant, or any essential witness . . . .

"(g) The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant.

"(h) The period of delay resulting from a continuance granted by the judicial authority at the request of the prosecuting attorney, if:

"(1) the continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting authority has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date . . . ."

was excludable time computed by the clerk.[6] The defendant did not challenge the court's computation of excludable time or the state's diligence in prosecuting the case against him. The court denied the defendant's motion for a speedy trial without prejudice and continued the case for three weeks.

The defendant argues that his statutory right was violated because the delay between his arrest and the commencement of trial was attributable solely to the prosecutor's failure to exercise diligence and the time should not have been excluded. "The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, 38 Conn. App. 868, 870–71, 663 A.2d 1085 (1995). The defendant argues that the record does not adequately support the trial court's finding that the prosecutor acted diligently and, thus, the trial court's finding of excludable time between July 22 and December 6, 1993, is clearly erroneous. We do not know the basis for the trial court's computation of excludable time and the defendant did not request an articulation. "It is the sole responsibility of the appellant to provide an adequate record for review." *Keiser* v. *Conservation Commission*, 41 Conn. App. 39, 46, 674 A.2d 439 (1996); Practice Book § 4061. Because the defendant has not provided this court with an adequate record, we are unable to review his claim.

### III

The defendant finally claims that the trial court improperly denied his motion to dismiss for failure to

---

[6] The court stated: "We don't articulate on the record what's excludable and what's not, and so there's no real record of it. But the clerk's computa-

grant a speedy trial and, in doing so, violated his federal and state constitutional rights to a speedy trial.

The right to a speedy trial is guaranteed by the sixth amendment to the United States constitution,[7] applicable to the states through the fourteenth amendment, and by article first, § 8, of the Connecticut constitution.[8] The defendant claims that his constitutional rights were violated by the unnecessary delay caused by the prosecutor's trial schedule and lack of diligence. In order to determine whether a criminal defendant has been deprived of his constitutional right to a speedy trial, our courts balance the following factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Internal quotation marks omitted.) *State* v. *Wall*, 40 Conn. App. 643, 651, 673 A.2d 530, cert. denied, 237 Conn. 924, 677 A.2d 950 (1996), quoting *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). " 'None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims*, [180 Conn. 589, 591–92, 430 A.2d 306 (1980)].' " *State* v. *Wall*, supra, 651.

The first and third factors of the test set out in *Barker* v. *Wingo*, supra, 407 U.S. 530, weigh in favor of the defendant.[9] There was a lapse of nearly fourteen months

---

tions indicate that there are 207 days excludable, which would make [the defendant] eligible around mid-April of 1994."

[7] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

[8] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. . . ."

[9] As to the second factor, the defendant again asserts that the delay was unnecessary and attributable solely to the prosecutor's lack of diligence. As previously stated, the record is not adequate to review the reasons for the delay. We will focus, therefore, only on factors one, three and four.

between the filing of the first information and trial. "Although [fourteen] months is not an overwhelming period of time, it is of such length that there is a necessity for inquiry into the other factors that go into the balance." *State* v. *Brown*, 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977). In addition, the defendant clearly asserted his right to a speedy trial.

Even though two of the factors are in the defendant's favor, the prejudice prong is " 'the linchpin of the speedy trial claim.' " *State* v. *Morrill*, 197 Conn. 507, 526, 498 A.2d 76 (1985). " '[U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.' " Id. The constitutional right to a speedy trial is designed " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " Id., 527.

The defendant claims that he was prejudiced by the anxiety that he suffered from being unable to support his family while he was incarcerated. While claims of anxiety are "unfortunately present in every case of pretrial delay, general claims of anxiety are thought insufficient to invoke what has been termed the unsatisfactorily severe remedy of dismissal." (Internal quotation marks omitted.) *Pelletier* v. *Warden*, 32 Conn. App. 38, 52, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993). Furthermore, the defendant's claim is weakened by his trial testimony that he had been unemployed when the shooting occurred and unable to pay his rent.

The defendant also claims that he was prejudiced by the unavailability of a state's witness, John LeBrun, who could not be located to testify at trial. LeBrun testified

at the probable cause hearing and his testimony was read into the record, absent objection by the defendant. The defendant claims he was prejudiced because he was unable to cross-examine LeBrun in front of the jury. At the probable cause hearing, however, the defendant's attorney had the opportunity to, and did in fact, cross-examine LeBrun and was able to elicit testimony favorable to his claim of self-defense.[10] The defendant has not demonstrated how LeBrun's presence at trial would have affected the outcome of his trial. Furthermore, the defendant has failed to establish a nexus between LeBrun's unavailability at the time of trial and the delay.

After balancing these factors, we conclude that the defendant was not deprived of his constitutional right to a speedy trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] At the probable cause hearing, LeBrun testified that Hilton had threatened the defendant's family, that gang members were outside of 9-11 Wyllys Street, and that at least one person in the foyer was armed.