## STATE OF CONNECTICUT *v.* FELIX RODRIGUEZ (AC 13915)

Foti, Lavery and Freedman, Js.

---

Argued September 15—officially released November 4, 1997

*Michael J. McAndrews*, for the appellant (defendant).

*Lisa Herskowitz*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *Warren Maxwell*, assistant state's attorney, for the appellee (state).

### Opinion

FOTI, J. The defendant, Felix Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a). The defendant

was also convicted of violation of probation in violation of General Statutes § 53a-32. On appeal, the defendant claims that the trial court improperly (1) instructed the jury on self-defense, (2) denied him his statutory right to a speedy trial, and (3) denied him his federal and state constitutional rights to a speedy trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On January 30, 1993, the defendant was visiting Hector Silva at Silva's residence. Silva resided with his family in a fourth floor apartment at 9-11 Wyllys Street, an apartment building in Hartford. At approximately 11 p.m., Javier Ortiz and Christopher May entered the building, unarmed, intending to discuss a previous altercation between Silva and Gene Hilton, a gang member. The previous altercation did not cause the defendant or Silva to fear for their lives or the lives of Silva's family members. The defendant and Silva, while standing on the second floor landing, opened fire as Ortiz and May entered the building. A bullet entered Ortiz' back, fatally wounding him. After the shooting, the defendant and Silva returned to Silva's apartment and watched television. The police arrived a short time later and arrested the defendant and Silva.[1]

At trial, it was not disputed that the defendant fired shots at Ortiz. The defendant claimed that he acted in defense of Silva and his family because he believed that Ortiz was entering the apartment building in order to kill them. The defendant did not testify at trial; however, Silva testified as follows. Approximately one month prior to the shooting, gang members had broken into his apartment and pistol-whipped him in front of his wife and children. Earlier on the evening of the shooting, he was assaulted by Hilton outside of the apartment

---

[1] The defendant and Silva were codefendants at trial. Silva filed a separate appeal. See *State* v. *Silva*, 43 Conn. App. 488, 684 A.2d 725 (1996), cert. denied, 239 Conn. 956, 688 A.2d 329 (1997).

building. Hilton then threatened to return with more gang members to kill Silva's family. Silva ran to his apartment, warned his wife in the presence of the defendant and instructed her to lock the door. Silva then picked up a handgun and left his apartment, accompanied by the defendant. Silva saw four people in the foyer of the building, and ten to fifteen people standing outside, carrying bottles and sticks, but did not see anyone carrying a gun. As Silva reached the second floor landing of his building, he heard a gunshot from outside the building. He then fired his own gun two or three times.

## I

The defendant claims that the trial court improperly instructed the jury on self-defense.[2] He asserts that the

[2] The trial court instructed the jury: "This, then, brings us to self-defense, or the defense referred to in the law as justification. The defendants, Hector Silva and Felix Rodriguez, have raised self-defense as a justification for the use of force on January 30, 1993, at the Wyllys Street apartment building. That is, defense of themselves and others, family. . . . The defense of self-defense is established in our law, or I should perhaps say, the defense of justification, that is, self-defense, is established in our law by General Statutes § 53a-19, titled, 'Use of Physical Force in Defense of Person.' It reads in pertinent part as follows: '[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . . *[A] person is not justified in using deadly physical force upon another person if he knows . . . he can avoid the necessity of using such force with complete safety . . . by retreating, except that the actor shall not be required to retreat if he is in his dwelling.'* "

" 'Dwelling' is defined in the statute as meaning a building which is usually occupied by a person lodging therein at night, whether or not the person is actually present. 'Building,' however, is defined as having its ordinary meaning, but where a building consists of separate units, such as separate apartments, each such unit is a separate building. *So that with respect to Mr. Hector Silva, his dwelling would be the particular apartment which he had the exclusive right to occupy, and would not include hallways, foyers and areas of the building which were open to others, which others*

trial court gave an erroneous instruction as to the duty to retreat because it failed to make a distinction between a person who has a right to be on the premises and an invader who has no right to be on those same premises. We disagree.

"Due process requires that a defendant charged with a crime must be afforded the opportunity to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Silva*, 43 Conn. App. 488, 491–42, 684 A.2d 725 (1996), cert. denied, 239 Conn. 956, 688 A.2d 329 (1997).

At trial, the defendant claimed that he acted in defense of Silva and his family because he believed that Ortiz was entering the apartment building in order to kill them. In his request to charge, the defendant asked the court to instruct the jury that "[a]s applied in the situation where force is used in defense of a third person, requiring a defendant acting in defense of another

*had a right to use, such as the front entrance way, the front foyer. . . ."* (Emphasis added.)

to retreat, without regard to the ability to retreat of the person defended, would be inconsistent with the general right to defense of others." The court instructed the jury in the exact language requested by the defendant. The court's instructions make it clear that a necessary predicate to the defendant's claim that he, as Silva's defender, did not have a duty to retreat, is that Silva himself did not have a duty to retreat. Because Silva did have such a duty, the trial court's instructions to the jury were proper.

In his appeal before this court, Silva asserted that the common areas of his apartment building are part of his dwelling and, thus, he had no duty to retreat before using deadly physical force upon Ortiz. Id., 492. In that case, we held that "the dwelling exception to the duty to retreat rule does not encompass the common areas of the defendant's apartment building such as stairways, hallways and foyers." Id., 493–94; see *State v. Sealy*, 208 Conn. 689, 694, 546 A.2d 271 (1988).

The defendant asserts that, despite our holding in *Silva*, neither he nor Silva had a duty to retreat because Ortiz was an "invader" who had no right to be in the apartment building. Section 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his *dwelling* . . . ." (Emphasis added.) The language of this statute unambiguously states that the applicability of the retreat exception is dependent on whether a person was in his "dwelling," not on whether he had a right superior to that of the victim to be in an area outside of his dwelling. Because neither the defendant nor Silva was in his dwelling at the time of the shooting, the trial court properly instructed the jury as to the duty to retreat.

## II

The defendant next claims that the trial court improperly deprived him of his statutory right to a speedy trial. We disagree.

General Statutes § 54-82m provides that, when a defendant is incarcerated pending trial, "the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later . . . ." The information or indictment must be dismissed if trial is not commenced within thirty days of the filing of a speedy trial motion by the defendant. Practice Book § 956C provides that certain periods of time are excludable in computing the time within which the trial must commence.[3]

The defendant was arrested on January 31, 1993, and the first information was filed on February 1, 1993. The defendant's codefendant, Silva, filed a speedy trial motion pursuant to § 54-82m on December 20, 1993, and a hearing was conducted on January 12, 1994. The

[3] Practice Book § 956C provides in relevant part that the following periods, inter alia, are excludable:

(4) "the time between the commencement of the hearing on any pretrial motion and the issuance of a ruling on such motion . . .

"(b) Any period of delay resulting from the absence or unavailability of the defendant, counsel for the defendant, or any essential witness for the prosecution or defense. . . .

"(g) The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant.

"(h) The period of delay resulting from a continuance granted by the judicial authority at the request of the prosecuting authority, if:

"(1) the continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting authority has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

"(2) the continuance is granted to allow the prosecuting authority additional time to prepare the state's case and additional time is justified because of the exceptional circumstances of the case. . . .

"(j) Other periods of delay occasioned by exceptional circumstances."

defendant filed his own speedy trial motion on February 15, 1994, and withdrew it on February 22, 1994. At the hearing on Silva's motion, the court noted that there was excludable time computed by the clerk. The court denied Silva's motion for a speedy trial without prejudice and continued the case for three weeks. At the February 2, 1994 hearing on Silva's motion, the court denied the motion as premature.

The defendant argues that his statutory right to a speedy trial was violated because the delay between the filing of the first information and the commencement of trial was attributable to the prosecutor's lack of diligence and his trial schedule. The defendant also contests the trial court's exclusion of the time period between July 22 and December 6, 1993, from the computation of time between the filing of the first information and the commencement of trial.

"The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . ." (Internal quotation marks omitted.) State v. Silva, supra, 43 Conn. App. 496. Pursuant to § 54-82m, the filing of a motion for a speedy trial by the defendant is a prerequisite to dismissal of the information. "Practice Book § 956D requires that if the defendant is not brought to trial within the applicable time limit . . . and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice . . . . Therefore, before the defendant may move for dismissal, he must file a motion for a speedy trial. Furthermore, § 956D provides: Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal

under these rules. Because a motion to dismiss is waived unless filed before the commencement of trial and a motion for a speedy trial must precede a motion for dismissal, logically a motion for a speedy trial must also be filed before the commencement of trial in order to be afforded a remedy under the rules." (Internal quotation marks omitted.) *State* v. *Green*, 38 Conn. App. 868, 872–73, 663 A.2d 1085 (1995). Because the defendant withdrew his motion for a speedy trial on February 22, 1994, and never filed a motion for dismissal, he is deemed to have waived his right to the statutory protection afforded by § 54-82m.

III

The defendant finally claims that his constitutional right to a speedy trial was violated by the unnecessary delay caused by the prosecutor's lack of diligence and trial schedule. Because the defendant withdrew his motion for a speedy trial and therefore failed to preserve his claim at trial, he can prevail only if the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.[4]

"The right to a speedy trial is guaranteed by the sixth amendment to the United States constitution,[5] applicable to the states through the fourteenth amendment, and by article first, § 8, of the Connecticut constitution.[6]

---

[4] In *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

[5] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

[6] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . in

. . . In order to determine whether a criminal defendant has been deprived of his constitutional right to a speedy trial, our courts balance the following factors: [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. . . . *State* v. *Wall*, 40 Conn. App. 643, 651, 673 A.2d 530, cert. denied, 237 Conn. 924, 677 A.2d 950 (1996), quoting *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). [N]one of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims*, [180 Conn. 589, 591–92, 430 A.2d [1306] (1980)]. *State* v. *Wall*, supra, 651." (Internal quotation marks omitted.) *State* v. *Silva*, supra, 43 Conn. App. 497.

The first factor of the test set out in *Barker* v. *Wingo*, supra, 407 U.S. 530, weighs in favor of the defendant. The total delay between the date of the first information and the commencement of trial was nearly fourteen months. Our Supreme Court has held that a delay of such length warrants inquiry into the other factors that go into the balance. See *State* v. *Brown*, 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977).

As to the second factor, the defendant asserts that the delay of the trial was attributable solely to the prosecutor's failure to exercise diligence in providing the state's chief forensic officer, Henry Lee, with the material he needed to perform a reconstruction of the crime scene. The defendant relies on the record from the hearings on codefendant Silva's speedy trial motion to support his argument that the trial court's finding of excludable time between July 22 and December 6, 1993,

---

all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. . . ."

to allow the reconstruction was clearly erroneous.[7] We cannot ascertain the basis of the trial court's computation of excludable time from the record and neither the defendant nor Silva requested an articulation. "It is the sole responsibility of the appellant to provide an adequate record for review. *Keiser* v. *Conservation Commission*, 41 Conn. App. 39, 46, 674 A.2d 439 (1996); Practice Book § 4061." (Internal quotation marks omitted.) *State* v. *Silva*, supra, 43 Conn. App. 496. Because the defendant has not provided this court with an adequate record, we are unable to review his claim that the delay of trial was attributable to the prosecutor's lack of diligence.

As to the third factor, the defendant concedes that he failed to assert his constitutional right to a speedy trial but claims that codefendant Silva's speedy trial motion alerted the trial court to the issue and should be weighed in his favor. The United States Supreme

---

[7] The following colloquy took place at the February 2, 1994 hearing on Silva's speedy trial motion:

"The Court: You're absolutely right. Let me just indicate this: The computations I have are that April 5 through May 25 was excludable time; June 9 through June 30 was excludable time; July 22 through December 6 was excludable time; and 207 days were excludable. The computation indicates that he's not eligible until April 20—this April.

"[Silva's Counsel]: Your Honor, if the court could please give the underlying facts as to why the last excludable time was until December.

"The Court: I'll have to look at my notes. I can't say that to you now.
* * *
"[Prosecutor]: Well, I—in the fall, I don't recollect if—many of these pretrials or continuances, I didn't participate in.
* * *
"The Court: The issue before me right now is whether or not this is ripe for a motion for a speedy trial.

"[Silva's Counsel]: Your Honor . . .

"The Court: All right, now, just hold on. When did you turn these matters, or when did Mr.—Dr. Lee have this information?

"[Prosecutor]: I believe I contacted him in December, Your Honor.

"The Court: Oh, I was hoping it was July, and that would explain the July through December excludable time."

Court has stated that "[t]he more serious the deprivation [of the right to a speedy trial], the more likely a defendant is to complain. The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker* v. *Wingo*, supra, 407 U.S. 531–32.

The defendant filed a motion for a speedy trial on February 15, 1994, and withdrew it on February 22, 1994. Both our state Supreme Court and the United States Supreme Court have emphasized " 'that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.' " *State* v. *Gasparro*, 194 Conn. 96, 101, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985), quoting *Barker* v. *Wingo*, supra, 407 U.S. 532. Our review of the record indicates no action that could be construed as the assertion of the speedy trial right, other than the February 15, 1994 motion that was withdrawn a week after it was filed. Furthermore, codefendant Silva's motion did not serve as an assertion of the defendant's right to a speedy trial.

" '[T]he linchpin of the speedy trial claim is a showing of prejudice,' the fourth factor listed in *Barker* v. *Wingo*, supra, [407 U.S. 530]." *State* v. *Morrill*, 197 Conn. 507, 526, 498 A.2d 76 (1985). " '[U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.' " Id. The right to a speedy trial is designed " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " Id., 527. "In *Barker* . . . the court noted that of the three interests served by the right to speedy trial, 'the most serious is the last, because the inability of a defen-

dant adequately to prepare his case skews the fairness of the entire system.' " *State* v. *Morrill*, supra, 527.

The defendant claims that he was prejudiced by the prosecutor's failure to produce in a timely manner an exculpatory statement made by Gene Hilton, thus denying him the opportunity to pursue additional exculpatory and impeachment evidence. Hilton gave a statement to the Hartford police approximately three weeks after the shooting in which he stated that both the victim and a key state's witness were high ranking gang members. Hilton also indicated that he never saw the defendant fire a gun and that there were fifteen to twenty witnesses to the shooting. This statement was not discovered until more than one year later, after the commencement of the trial. The defendant claims that he was prejudiced because Hilton's statement contained information as to the identities of fifteen to twenty favorable witnesses who could have been located and who would have testified had the statement been given to the defendant in a timely manner.

"[I]f a defendant merely alleges . . . inability to locate known or unknown witnesses who might testify on his behalf, he has failed to illustrate prejudice with the required degree of specificity. *United States* v. *Ewell*, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L. Ed. 2d 627 [1966]; *United States* v. *Churchill*, 483 F.2d 268, 273–74 (1st Cir. [1973]). *State* v. *L'Heureux*, 166 Conn. 312, 321, 348 A.2d 578 (1974)." (Internal quotation marks omitted.) *State* v. *Morrill*, supra, 197 Conn. 528, quoting *State* v. *Johnson*, 190 Conn. 541, 546, 461 A.2d 981 (1983). "The defendant must establish that the witnesses would have been available without the delay. . . . Conjectural claims of prejudice from a delay are not persuasive." (Citations omitted.) *State* v. *Morrill*, supra, 528.

The defendant has failed to explain how the delay between the filing of the first information and the commencement of trial prevented him from discovering the identities of the witnesses to whom Hilton referred. To the contrary, because Hilton's statement was not discovered until April of 1994, it is possible that, had the trial commenced earlier, the defendant might not have had the benefit of the statement at all. Furthermore, the defendant failed to request a continuance following the prosecutor's disclosure of Hilton's statement. Because the defendant has failed to establish a nexus between the delay and his inability to produce evidence, his claim of prejudice is conjectural and, therefore, insufficient to support a claim of deprivation of the right to a speedy trial.

The defendant also claims that Hilton would have testified had the trial commenced earlier and that it was only after the lengthy delay that Hilton began to fear for his safety and refused to testify. The defendant relies on Hilton's statement to the Hartford police, made three weeks after the shooting, to support his argument that Hilton would have been available to testify had the trial commenced earlier.[8] The defendant argues that because Hilton was unavailable at the time of trial, he was forced to enter into an agreement with the prosecutor to admit Hilton's statement along with prejudicial hearsay information.

The defendant has not challenged the propriety of the early portion of the delay from February 1 through July 21, 1993, but claims that the delay from July 22 through December 6, 1993, was caused by the prosecutor's failure to make a timely request for a crime scene reconstruction. When Hilton was called to testify at

---

[8] In his statement, dated February 18, 1993, Hilton states: "Everything that I have told Detectives Pollard and Bruno is the truth and I'm willing to testify to what I have said in court."

trial on April 28, 1994, he refused because he was "not a snitch" and because if he testified it "could get back to [his] people" and "put [him] in danger." Thus, it is not clear that the witness would have testified even if the defendant had been tried sooner. Therefore, the defendant has failed to establish a nexus between the delay and Hilton's unavailability at the time of trial.

After balancing these factors, we find that the defendant was not deprived of his constitutional right to a speedy trial.

The judgments are affirmed.

In this opinion the other judges concurred.