[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Re: Motion to Set Aside and For New Trial
The plaintiff in the instant action has moved to set aside the jury verdict for twenty-two various reasons:
 1. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence of a prior criminal/sexual activity with other patients.
 2. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence of the standard of care was that within the common purview of the jury and that the plaintiffs position that the acts committed by the Defendant were gross and obvious.
 3. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence, that the Plaintiff's decedent was suffering from and addicted to Klonopin.
 4. The denial of the Plaintiff to present evidence that the suicide was one of the elements of damage, in that the sexual abuse was one of the reasons, the plaintiff committed suicide, as based upon the suicide note, as well as testimony from Dr. Rubin.
 5. The denial of the court to allow in as Admissions of a party Opponent the police statement from the defendant, given in September 30, 1997 which was delineated to the Court on Wednesday, May 29, 2002.
6. From the Court's refusal in having the defendant CT Page 1298 take the Fifth Amendment as to each question, as opposed to allowing the defendant to take a blanket Fifth Amendment outside of the presence of the jury.
 7. From the Court's allowing the defendant to take the Fifth Amendment when there was no ground as the Statute of Limitations as any offenses of Michael Vadala had expired.
 8. From the Court's allowing the defendant to take the Fifth Amendment, when he had already spoken on the topic of sexual contact with a patient, office procedures, his approach to patients and their treatment to the investigating police officers in September, 1997.
 9. From the Court's denial of allowing the police report of"JM", since the defendant through adoptive admission affirmed the statements of sexual assault of which the investigating officers were questioning the defendant on in September 30, 1997.
 10. From the Court's refusal to charge out the issue of consent.
 11. From the Court's refusal to charge on the Fifth Amendment as illustrated in the plaintiffs request to charge.
 12. From the Court's refusal to charge on the implied contract.
 13. From the Court's refusal to address the issue that on negligence per se, foreseeability is not required and by leaving that portion of the charge following negligence per se, it would cause confusion and misinterpretation of the law.
 14. From the Court's adopting the defendant's request to charge on the essential elements of the case.
15. From the Court imposing restrictions on the plaintiffs case, arguments and questions during argument or presentation of his case. CT Page 1299
 16. From the Court's ruling that questions posed, albeit limited to the defendant during the offer of proof, were meant to inflame the jury, when the very questions posed went to the heart of the plaintiffs case.
 17. From the Courts refusal in allowing the issues of the motive, intent and state of mind of the defendant be raised via the admissions contained in the police statement given by the Defendant.
 18. From the Court's curative ruling that the members of the jury do not speak for society.
 19. From the foregoing rulings which in essence caused the plaintiff not to have a fair trial, and the whole proceedings were vitiated.
 20. From the Court's refusal to charge on the Plaintiffs sympathy instruction, in that the jury is allowed to take into account the Plaintiffs decedent livelihood, hobbies and activities.
 21. From the Court's refusal to allow Diane Miserandino to testify that the prescription drug of Klonopin and how the defendant doctor did not perform a "stress evaluation" on her. (sic)
 22. From the Court's allowance of 5 (five) Defendant's objections throughout the Plaintiffs Closing Argument and also not allowing the Plaintiff latitude in argument.
 Standard of Review
Our state's Supreme Court has identified a standard for setting aside a verdict:
The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. O'Brien v. Seyer, 183 Conn. 199, 208, 439 A.2d 292 (1981). "The supervision which a judge has over the verdict is an essential part of the jury system. . . . [The trial CT Page 1300 court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality." Burr v. Harty, 75 Conn. 127, 129, 52 A. 724 (1902). The court has a duty to set aside the verdict where the jury's action is so unreasonable as to suggest that it was the product of such improper influences. State v. Avcollie, 178 Conn. 450, 457, 423 A.2d 118
(1979), cert. denied, 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980), affd, 188 Conn. 626, 453 A.2d 418
(1982), cert. denied, 461 U.S. 928, 103 S.Ct. 2088, 77 L.Ed.2d 299 (1983); Roma v. Thames River Specialties Co., 90 Conn. 18, 19-20, 96 A. 169 (1915). A verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. Roma v. Thames River Specialties Co., supra, 20.
Palomba v. Gray, 208 Conn. 21, 23 (1988).
The majority of the errors asserted by the movant are evidentiary in nature.
 "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice" . . .
Furthermore, a party seeking a new trial because of an improper evidentiary ruling has "the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would CT Page 1301 likely affect the result." (Internal quotation marks omitted.) Washington v. Christie, 58 Conn. App. 96, 100, 752 A.2d 1127, cert. denied, 254 Conn. 906, 755 A.2d 884 (2000). The party "is entitled to relief from an erroneous ruling on the admissibility of evidence only if the error is also harmful. . . . [T]he plaintiff [bears the] burden of demonstrating that the erroneous ruling was likely to affect the result of the trial."
Bugryn v. City of Bristol, 63 Conn. App. 98, 111 (2001).
 Discussion 1. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence of a prior criminal/sexual activity with other patients.
The plaintiff asserts that the Court erred in denying its objection to the defendant's motion in limine concerning precluding evidence of a prior criminal/sexual activity with other patients. In fact that Court denied the Motion in Limine for reason that the Court believed that there was a possibility that such evidence could be admissible under the proper circumstances. The Court then requested that counsel give the Court ample warning before delving into this area to prevent the possibility of the jury receiving inadmissible evidence.
 2. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence of the standard of care was that within the common purview of the jury and that the plaintiff's position that the acts committed by the Defendant were gross and obvious.
The Amended Fourth Revised Complaint states in pertinent part that:
 9. The aforementioned acts were done negligently and carelessly as a medical treatment in an effort to reduce anxiety, which was the medical condition the Plaintiff was being treated for by the Defendant, Dr. Christoforo.
This case involved a very complex allegations and facts. This Court was of the belief that expert witness testimony as to the standard of care CT Page 1302 was crucial in light of the fact that there were disputed issues as to whether the alleged activities of the defendant with the plaintiffs decedent were done as a medical treatment. There was the further issue as to whether a Medical Doctor could ever have a sexual relationship with a patient. There are issues that fall outside of "common knowledge" and require the intervention of an expert.
 "All medical malpractice claims, whether involving acts or inactions of a defendant physician, require that a defendant physician's conduct proximately cause the plaintiffs injuries. The question is whether the conduct of the defendant was a substantial factor in causing the plaintiffs injury. Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." (Internal quotation marks omitted.) Poulin v. Yasner, 64 Conn. App. 730, 738, 781 A.2d 422, cert. denied, 258 Conn. 911, 782 A.2d 1245 (2001); see also Conn. Code Evid. § 7-2; fn8 2 B. Holden J. Daly, Connecticut Evidence (2d Ed. 1988) §§ 119d-119f.
 Carusillo v. Associated Women's Health, 72 Conn. App. 75, 85 (2002).
"As a general rule, for a plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care. Dunham v. Dunham, 204 Conn. 303, 317, 528 A.2d 1123 (1987); Pearl v. Nelson, 13 Conn. App. 170, 173, 534 A.2d 1257 (1988); Bent v. Green, 39 Conn. Sup. 416, 420, 466 A.2d 322
(1983). The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. Fitzmaurice v. Flynn, 167 Conn. 609, 617, 356 A.2d 887 (1975); Decho v. Shutkin, 144 Conn. 102, 106, 127 A.2d 618 (1956); Bent v. Green, supra." Davis v. Margolis, supra, 215 Conn. 416. "The true test for the admissibility of expert testimony is whether the witnesses offered as experts have any peculiar CT Page 1303 knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." (Internal quotation marks omitted.) Caron v. Adams, 33 Conn. App. 673, 690, 638 A.2d 1073 (1994) quoting Puro v. Henry, 188 Conn. 301, 309, 449 A.2d 176
(1982).
Vona v. Lerner, 72 Conn. App. 179, 188 (2002).
 3. The denial of the Plaintiff's Objection to Motion in Limine dated May 9, 2002, which sought to include evidence, that the Plaintiffs decedent was suffering from and addicted to Kionopin.
The plaintiff asserts that his decedent was addicted to the drug Klonopin and evidence was admitted during the trial of concerning statements by the plaintiffs decedent concerning his belief that he was addicted to Klonopin.[1] However the plaintiff did not produce any evidence via expert witness testimony that the plaintiffs decedent was actually addicted to Klonopin. On the contrary, evidence was produced by both sides through fact witnesses that subsequent treaters of the plaintiffs decedent, including, but not limited to Dr. Rubin continued to treat him with the drug.
 4. The denial of the Plaintiff to present evidence that the suicide was one of the elements of damage, in that the sexual abuse was one of the reasons, the plaintiff committed suicide, as based upon the suicide note, as well as testimony from Dr. Rubin.
The evidence presented at trial was that Dr. Rubin had not treated the plaintiffs decedent for a substantial period of time before the plaintiffs decedent committed suicide. Evidence was also admitted that the plaintiffs decedent had suffered from a number of different stressers during this period of his life, including but not limited to being told that he would have to deal with a major disability due to a car accident. During a voir dire of the Dr. Ruben he stated that he could not state to a reasonable degree of medical probability that sexual abuse by the defendant was a substantial factor in bringing about the plaintiffs decedent's suicide.
As to the issue of the suicide note, it was devoid of any mention of the defendant and actually pointed blame to his automobile accident and CT Page 1304 at the doctor who treated him for his back injury.
 5. The denial of the court to allow in as Admissions of a party Opponent the police statement from the defendant, given in September 30, 1997 which was delineated to the Court on Wednesday, May 29, 2002.
Although the plaintiff characterizes the subject statements as "admissions" the Court did not find the statements to rise to the level of being such. The offered statements concerned statements made by the defendant to the police during investigations of persons other than the plaintiffs decedent. The plaintiff simply failed to establish that the statements were admissions and that said statements were relevant to the instant action. Furthermore, upon reviewing the statements the Court determined that any probative value of said statements was outweighed by its prejudicial effect.
 "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." In this context, unfair prejudice is that which "unduly arouse[s] the jury's emotions of prejudice, hostility or sympathy; State v. Wilson, 180 Conn. 481, 490, 429 A.2d 931 (1980); or tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence. State v. Graham, 200 Conn. 9, 12, 509 A.2d 493
(1986), quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). . . .
 Ancheff v. Hartford Hospital, 260 Conn. 785, 804 (2002).
 6. From the Court's refusal in having the defendant take the Fifth Amendment as to each question, as opposed to allowing the defendant to take a blanket Fifth Amendment outside of the presence of the jury.
Upon this Court being informed by the parties that the defendant would exercise his Fifth Amended rights when called to testify proceeded to balance the rights of the parties. The Court was concerned with the possibility that the witness's invocation of his Fifth Amendment privilege in the presence of the jury would disproportionately, impact on its CT Page 1305 deliberations.
When the defendant Christoforo was called to the witness stand, the Court, outside of the presence of the jury permitted the plaintiff asked witness myriad questions to each of which the defendant asserted his Fifth Amendment privilege. Upon completing the questioning, the jury was called back into the Courtroom and informed that the defendant has exercised his Fifth Amendments Rights.
The Court further charged that the jury could make an adverse inference from the defendant's refusal to testify.
 "[A] witness may not be called to the stand in the presence of the jury merely for the purpose of invoking his privilege against self-incrimination. State v. Person, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991); State v. Bryant, supra, [683]; State v. Reddick, 197 Conn. 115, 126-28, 496 A.2d 466
(1985), cert. denied, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986)." State v. Dennison, 220 Conn. 652, 660, 600 A.2d 1343 (1991). This rule is grounded "`in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations.'" State v. Eichstedt, 20 Conn. App. 395, 401, 567 A.2d 1237, cert. denied, 214 Conn. 806, 573 A.2d 318 (1990), quoting Bowles v. United States, 439 F.2d 536, 541-42
(D.C. Cir. 1970), cert. denied. 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971).
 State v. Cacarelli, 32 Conn. App. 811 821 (1993).
 7. From the Court's allowing the defendant to take the Fifth Amendment when there was no ground as the Statute of Limitations as any offenses of Michael Vadala had expired.
 And 8. From the Court's allowing the defendant to take the Fifth Amendment, when he had already spoken on the topic of sexual contact with a patient, office procedures, his approach to patients and their treatment to the investigating police officers inCT Page 1306 September, 1997.
Before an individual can be justified in asserting his Fifth Amendment privileges, "it must appear that there [is] a reasonable ground to apprehend from [the questioning that there is] some real danger of incrimination." McCarthy v. Clancy, 110 Conn. 482, 490 (1930). Evidence was produced at trial that the defendant had criminal charges pending against him. Said charges involved other male patients of the defendant and said charges were of a sexual nature. Evidence was also admitted that the North Haven Police Department had an open file concerning the facts that are the subject of the instant action, and that the state prosecutor was awaiting the outcome of aforementioned prosecution before deciding whether or not to prosecute the defendant in a case related to the plaintiffs decedent.
The Complaint in the instant action alleges actions by the defendant that continued through January 1998. The trial of this matter took place in the summer of 2001.
Section 54-193 of the Connecticut General Statutes concerns a statute of limitations for certain offenses. Subsection 54-193 (b) provides that:
 (b) No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, except within one year next after the offense has been committed.
Section 53a-71 concerns the offense of sexual assault in the second degree and is a Class C felony. The Court notes that it charged the jury on the civil tort of per se sexual assault pursuant to this statute. The Court also notes that less then five years had passed between the last offense allegedly committed by the defendant on the plaintiffs decedent and the date of the defendant's testimony.
9. From the Court's denial of allowing the police report of "JM", since the defendant through adoptive admission affirmed the statements of sexual assault of which the investigating officers were questioning the defendant on in September 30, 1997.
CT Page 1307
Although the plaintiff characterizes the subject statements as "admissions" the Court did not find the statements to rise to the level of being such. The offered statements concerned statements made by the defendant to the police during investigations of persons other than the plaintiffs decedent. The plaintiff simply failed to establish that the statements were admissions and that said statements were relevant to the instant action. Furthermore, upon reviewing the statements the Court determined that any probative value of said statements was outweighed by their prejudicial effect. See Ancheff v. Hartford Hospital, Supra.
 10. From the Court's refusal to charge out the issue of consent.
This case involved a very complex allegations and facts. This Court was of the belief that expert witness testimony as to the standard of care was crucial in light of the fact that there were disputed issues as to whether the alleged activities of the defendant with the plaintiffs decedent were done as a medical treatment. There was the further issue as to whether a Medical Doctor could ever have a sexual relationship with a patient. There are issues that fall outside of "common knowledge" and require the intervention of an expert. (See Section 2 above.)
 11. From the Court's refusal to charge on the Fifth Amendment as illustrated in the plaintiff's request to charge.
 And 12. From the Court's refusal to charge on the implied contract.
 And 13. From the Court's refusal to address the issue that on negligence per se, foreseeability is not required and by leaving that portion of the charge following negligence per se, it would cause confusion and misinterpretation of the law.
 And 14. From the Court's adopting the defendant's request to charge on the essential elements of the case.
CT Page 1308
The Court believes that the actual charge given to the jury accurately reflected the state of the law.
 In analyzing the defendant's claim on appeal, "[w]e must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." State v. Lemoine, 233 Conn. 502, 509, 659 A.2d 1194 (1995). "The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) State v. Rodriguez, 47 Conn. App. 91, 95, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998). Here, the charge accurately stated the law, was adapted to the issues and facts of the case, and was sufficient to guide the jury.
 State v. Rigual, 49 Conn. App. 420, 429 (1998).
 15. From the Court imposing restrictions on the plaintiff's case, arguments and questions during argument or presentation of his case.
The allegations of this section of the plaintiffs motion are rather broad in nature. However, upon reviewing the record, and the Court's notes, the Court disagrees with the plaintiffs assertion that it imposed any unwarranted restrictions on the plaintiff.
 16. From the Court's ruling that questions posed, albeit limited to the defendant during the offer of proof, were meant to inflame the jury, when the very questions posed went to the heart of the plaintiff's case.
See Section 6 above.
17. From the Courts refusal in allowing the issues of the motive, intent and state of mind of the defendant be raised via the admissions contained in the police statement given by the Defendant.
CT Page 1309
See Section 9, above.
 18. From the Court's curative ruling that the members of the jury do not speak for society.
The Court believes that the instructions given to the jury accurately reflected the state of the law. See Section 14, above.
 19. From the foregoing rulings which in essence caused the plaintiff not to have a fair trial, and the whole proceedings were vitiated.
The allegations of this section of the plaintiffs motion are rather broad in nature. However, upon reviewing the record, and the Court's notes, the Court asserts that said rulings were necessary in order for the parties to have a fair trial and disagrees with the plaintiffs assertion that its rulings deprived the plaintiff of a fair trial.
 20. From the Court's refusal to charge on the Plaintiffs sympathy instruction, in that the jury is allowed to take into account the Plaintiffs decedent livelihood, hobbies and activities.
The Court believes that the actual charge given to the jury accurately reflected the state of the law. See Section 14, above.
 21. From the Court's refusal to allow Diane Miserandino to testify that the prescription drug of Klonopin and how the defendant doctor did not perform a "stress evaluation" on her. (sic)
This case involved a very complex allegations and facts. This Court was of the belief that expert witness testimony as to the standard of care was crucial in light of the fact that there were disputed issues as to whether the alleged activities of the defendant with the plaintiffs decedent were done as a medical treatment. These issues that fall outside of "common knowledge" and require the testimony of expert witnesses. See Section 9 above.
 22. From the Court's allowance of 5 (five) Defendant's objections throughout the Plaintiffs Closing Argument and also not allowing the Plaintiff latitude in argument.
The Court asserts that said rulings were necessary in order for the CT Page 1310 parties to have a fair trial and disagrees with the plaintiffs assertion that its rulings deprived the plaintiff of a fair trial.
 Conclusion
Although the plaintiff has cited myriad reasons to set the verdict aside in this matter, the Court notes that neither the plaintiff nor the defendant requested interrogatories. Therefore the issue of the general verdict rule must be discussed.
 There were no interrogatories in this case, and the jury, on its verdict form, stated that it found all of "the issues for the defendant," thereby causing the principles of the general verdict rule to apply. The general verdict rule presumes that all disputed issues were found in favor of the prevailing party. Mather v. Griffin Hospital, 207 Conn. 125, 131, 540 A.2d 666
(1988).
 In the event of a general verdict for a defendant, it is not known whether the jury found against the plaintiff because the defendant was not negligent or because the plaintiff had not proved that the defendant's negligence was the proximate cause of any injury to the plaintiff.
 Palkimas v. Lavine, 71 Conn. App. 537, 540 (2002).
For all of the foregoing reasons, the plaintiffs Motion to Set Aside the Verdict and for New Trial is denied.
 ___________________ Richard A. Robinson January 20, 2003