### STATE OF CONNECTICUT *v.* ROBERT MERCER
### (10890)

DUPONT, C. J., O'CONNELL and LANDAU, Js.

Argued October 26—decision released December 15, 1992

---

*Thomas M. Conroy,* special public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Robert J. O'Brien,* supervisory assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).[1] The defendant claims that the evidence was insufficient to prove that he used a dangerous instrument while committing a robbery.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. About 8:45 p.m. on February 12, 1991, the defendant ran up behind Betsy Galan and Wanda Woolfolk on a New Haven street and ordered them to take off their coats. Both refused to comply until the defendant pulled a .38 caliber revolver from his pocket and pointed it at them. Woolfolk quickly removed her coat but Galan resisted. The defendant threatened to pistol whip Galan if she did not comply with his demands.

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] Originally, the defendant also claimed illegality in the failure of the police to preserve certain 911 tapes. The recently decided case of *State* v. *Cain,* 223 Conn. 731, 613 A.2d 804 (1992), held that 911 tapes are not "statements" that require preservation. The defendant concedes that *Cain* controls and has withdrawn this claim.

The defendant's insufficiency of evidence claim pertains only to the robbery of Betsy Galan.

When Galan continued to resist, the defendant turned the gun around and, grasping it by the barrel, pressed the butt against Galan's cheek. He then started tapping Galan's face with the butt. As Galan continued to resist, the defendant became angry and began striking her face harder and harder. Upon receiving a particularly forceful blow, Galan surrendered her coat. Thereafter, while pointing his gun at the women, the defendant threw down Woolfolk's coat and ran off with Galan's. The gun was never recovered. Galan, who knew the defendant by sight, furnished his name to the New Haven police and identified his photograph.

The state had the burden of proving that the defendant committed a robbery by using or threatening the use of a dangerous instrument. General Statutes § 53a-134 (a) (3). The defendant argues that the state failed to carry its burden because it did not demonstrate that the gun was capable of inflicting serious physical injury.[3]

We commence our analysis by distinguishing between the terms "deadly weapon" and "dangerous instrument," both terms of art specifically defined in the penal code.[4] The relevant portion of General Statutes § 53a-3 (6) defines deadly weapon, as "any weapon whether loaded or unloaded, from which a shot may be discharged . . . ." General Statutes § 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used . . . or threatened to be used, is capable of causing death or serious physical injury . . . ."

---

[3] General Statutes § 53a-3 (4) defines serious physical injury as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

[4] For the history of the distinction between "deadly weapon" and "dangerous instrument," see the decision of this court in *State* v. *Osman,* 21 Conn. App. 299, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991).

Although a pistol was involved in this case, it was not employed for its designed purpose of firing a bullet; rather, it was used as a bludgeon to strike Galan and as the instrument for a threatened pistol whipping. Accordingly, contrary to the defendant's claim, it is irrelevant that there was no evidence that the pistol was capable of discharging a shot.

We focus on the issue of whether, under the facts of this case, the pistol was a dangerous instrument. The state does not claim that serious physical injury was in fact caused to either victim. The state was required to prove only that " 'the instrument possessed the *potential* for causing either death or serious physical injury under the circumstances in which it was used.' " (Emphasis added; internal quotation marks omitted.) *State* v. *Vuley*, 15 Conn. App. 586, 588, 545 A.2d 1157 (1988). An injury does not have to be actually inflicted. *State* v. *Jones*, 173 Conn. 91, 95, 376 A.2d 1077 (1977).

Because a dangerous instrument may be an ordinary object not designed to cause death or serious physical injury; *State* v. *Osman*, 21 Conn. App. 299, 307, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991); each case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury. See *State* v. *Vuley*, supra. We do not examine its dangerous capabilities in the abstract. *State* v. *Grant*, 177 Conn. 140, 146 n.5, 411 A.2d 917 (1979).

Whether the gun used in the present case was, under all the circumstances, capable of causing serious physical injury presented a question of fact for the jury. Our review of the record satisfies us that there was sufficient evidence to support the jury's finding that the

defendant used or threatened the use of a dangerous instrument during the course of a robbery.

The judgment is affirmed.

In this opinion the other judges concurred.