[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this habeas proceeding the petitioner claims that he was denied effective assistance of counsel at both the trial and appellate level thereby denying him of his constitutionally protected, rights pursuant to the sixth amendment to the United States Constitution and Article 1 Section 8 of the Connecticut constitution. The petitioner was represented at trial and on appeal by Attorney, Thomas M. Conroy. The petitioner was convicted after a jury trial, Fracasse, J. presiding, of two counts of first degree robbery in violation of General Statutes § 53a-143(a)(3). On November 15, 1991 the petitioner was sentenced to a total effective sentence of thirty years. The petitioner appealed his conviction which conviction was upheld.State v. Mercer, 29 Conn. App. 679, (1992). The petitioner, after his sentencing on November 15, 1991, filed this habeas petition on January 7, 1992. This was prior to trial counsel's filing his appellate brief on January 27, 1992. The petitioner is presently in the custody of the Commissioner of Corrections serving the sentence.
The petitioner more specifically claims that counsel was ineffective in that counsel failed to properly cross-examine the victims, Woolfolk and Galan, by failing to impeach them with prior inconsistent statements; that trial counsel was deficient in his investigation of this matter in so far as he failed to establish the time of the robbery thus preventing the petitioner from asserting an alibi defense; that he failed to properly represent the petitioner on direct appeal in so far as he continued his representation when the petitioner had filed a CT Page 13520 habeas corpus petition alleging ineffective assistance of trial counsel; and that he failed to ascertain by proper investigation that one of the victims, Galan, had bitter conflicts with the petitioner in the past and therefore, failed to call her as a hostile witness in the defendant's "case in chief." (see Amended Petition March 20, 1997.)
 I
With respect to petitioner's claims of ineffectiveness at the trial level, in order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation does not mean representation free of any error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
In Strickland, the Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.)Strickland v. Washington, supra, 466 U.S. 689-90; Quintana v.CT Page 13521Warden, 220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419
(1991); Jeffrey v. Commissioner, 36 Conn. App. 216 (1994).
With respect to the second prong of the Strickland test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. "Strickland v. Washington, supra466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" Fair v. Warden, 211 Conn. 398, 408
(1989); Jeffrey v. Commissioner, 36 Conn. App. 216 (1994).
 II
The legal standard to be applied to allegations of ineffective assistance of counsel based upon an alleged conflict of interest differ from that set forth above. As stated defendants in a criminal matter have a constitutional right to effective assistance of counsel. "As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." Wood v. Georgia, 450 U.S. 261,271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); Glasser v.United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942);State v. Martin, 201 Conn. 74, 78, 513 A.2d 116 (1986); Festo v.Luckhart, [supra,] 626-27." State v. Williams, 203 Conn. 159,166-67, 523 A.2d 1284 (1987).
The primary distinction in reviewing "actual conflict of interest" claims as compared to an "actual ineffective assistance" claim involves the prejudice prong of the Strickland test. The petitioner in a conflict of interest claim need not demonstrate actual prejudice. "Where there is an actual conflict of interest, prejudice is presumed because counsel [has] CT Page 13522 breach[ed] the duty of loyalty perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect or the defense of representation corrupted by conflicting interests." Strickland v. Washington, 466 U.S. 668,687, 104 S.Ct. 2052, (1984). In a case of a claimed ineffective assistance of counsel based upon a conflict of interest, in order to establish a violation of the sixth amendment, the defendant has a two-pronged task. He must establish "that counsel `actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.'" Id., quoting Cuyler v. Sullivan, supra, 350; see also Burger v. Kemp,483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638, reh. denied,483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987); State v.Rodriquez, 200 Conn. 685, 696, 513 A.2d 71 (1986). fn16.
An actual conflict of interest exists when the interests of trial counsel diverge from the interests of the client. While conflicts of interest most frequently arise when defense counsel seeks to represent multiple defendants in the same criminal action, a variety of other situations have been held to create actual conflicts.[1] In the matter presently before the court the petitioner claims that the filing of the habeas petition immediately after trial and prior to the filing of appellate briefs created an actual conflict requiring counsel to withdraw from representation. Upon learning of the filing of the habeas, trial counsel consulted with the office of the Chief Public Defender[2] on this issue and was advised that the filing of a habeas was not an uncommon occurrence. Trial counsel next discussed this matter with the petitioner. The petitioner told counsel that he had done what he had to do to get out of prison and that it was "nothing personal." No evidence was introduced that would indicate that any animosity existed between the petitioner and trial counsel, nor was there any evidence that the petitioner asked counsel to withdraw or that counsel offered to withdraw. Trial counsel continued representation of the petitioner at the appellate level because he felt that he knew the case better than anyone else and would therefore be in a better position to represent the petitioner on appeal.
The first question presented to the court is whether there existed an actual conflict of interest. The court finds that no actual conflict existed.[3] A conflict of interest exists when the interests of the petitioner and those of his attorney diverge. Rule 1.7 of the Rules of Professional Conduct state, in part, that "(b) A lawyer shall not represent a client if the CT Page 13523 representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person,or by the lawyer's own interests, unless: (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) The client consents after consultation." (emphasis added). Assuming that trial counsel's interest was in having the habeas petition dismissed in order to preserve his reputation, this goal was consistent with the petitioner's interest in a successful appeal. At no time during the pendency of the appeal did the petitioner's interest and trial counsel's interest diverge. No breach of the attorney's duty of loyalty to his client was threatened, under the circumstances of this case, since a successful appeal would have obviously been in the best interest of the petitioner and would also result in a dismissal of the habeas claim.[4]
In Phillips v. Warden, 220 Conn. 112, the Supreme Court specifically rejected the minority's test that if both the defense counsel and the petitioner desire an acquittal then an actual conflict of interest does not exist. "The dissent, by concluding that there was no conflict of interest because both Avcollie[5] and the petitioner desired an acquittal, endorses this bizarre view of a conflict of interest. Neither the cases involving conflicts of interest nor the principles of thesixth amendment suggest such an extreme requirement." Phillips, supra at 144, footnote 21. That situation differs from the situation presented to this court. Here the alleged conflict is a result of the filing of a habeas petition. Trial counsel's personal interest in the outcome of the proceeding is presumably that it be dismissed. That interest would be furthered by a successful appeal. Thus the test that is being employed, under the circumstances of this case, is not whether the petitioner and the defendant desire the same appellate result but rather does a successful appellate result further the interests of the petitioner and his trial counsel. If it does then no conflict exists because it cannot be said that trial counsel's fiduciary duty has been impaired thus not permitting counsel to "give individual loyalty to the petitioner and to exercise independent professional judgement on the petitioner's behalf," Phillips, supra at 142.
In an Illinois appellate court case, the court stated "[d]efendant also alleged that, when O'Rourke pursued the appeal on defendant's behalf, he was laboring under a conflict of interest. Defendant argues that O'Rourke had an interest in CT Page 13524 protecting his professional reputation which conflicted with defendant's interest in advancing a claim of ineffective assistance of counsel. When counsel is called upon to argue his own ineffectiveness, a conflict of interest arises. (People v. Fields (1980), 88 Ill. App.3d 821, 823-24, 44 Ill.Dec. 86, 88,410 N.E.2d 1178, 1180.)", People v. Ramirez, 613 N.E.2d 1230
(Ill.App. 4 Dist. 1993). This concern is not present in the matter pending before this court. Our Supreme Court has determined that ineffective assistance of counsel claims are more; appropriately brought in a habeas proceeding and not on direct appeal. "This court has emphasized in other cases that a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal. State v. Mason,186 Conn. 574, 578-79, 442 A.2d 1335 (1982)[6], State v. Just,185 Conn. 339, 370-71, 441 A.2d 98 (1981). The trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action. The defendant appears to have been concerned that his failure on appeal to raise any ineffective assistance claims that the record adequately supports might be regarded as a deliberate bypass of the appellate remedy, which would preclude review of them in a habeas corpus proceeding. See State v. Gethers, 193 Conn. 526,541, 480 A.2d 435 (1984). We have recently relaxed the deliberate bypass rule in cases in which the sole claim for relief from a criminal conviction is a claim of ineffective assistance of counsel. State v. Rivera, 196 Conn. 567, 571, 494 A.2d 570
(1985). In this appeal the defendant has raised several grounds for setting aside his conviction in addition to his claim of incompetent counsel and, thus, Rivera is not controlling. On further consideration, however, we have decided once more to lower this barrier to habeas corpus relief. It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceeding. A defendant should not be required to await the outcome of his appeal upon other issues before pursuing his claim of incompetent counsel. If his claim is meritorious, he may often obtain relief in the trial court before his appeal on other issues can be heard, thus mooting such an appeal. An appeal by the state or the defendant from the determination of the incompetency of counsel question may also be joined with a pending appeal from the judgment of conviction, thus allowing a single resolution on appeal of all the claims of error that have been raised. In view of this modification of our procedure in CT Page 13525 regard to ineffective assistance claims, we shall not review at this time even the portion of the defendant's ineffective assistance claim that he contends is adequately supported by the record. Though we have resolved his other claims of error, we believe that his ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." (internal quotations omitted) State v. Leecan, 198 Conn. 517, 541,504 A.2d 480 (1986)). In this case, however, the petitioner/defendant elected to file a habeas petition rather than to have the issues of the claimed incompetence of counsel decided by the trial court on a motion for new trial pursuant to General Statutes §52-270. If the petitioner had in fact used the motion for new trial, as a mechanism in seeking relief, then it would appear that a conflict of interest would exist if trial counsel did not withdraw. This distinguishes this matter from People v. Fields, supra.
Thus trial counsel who also represents a defendant on appeal, is not put in the position of having to advance an argument in the appellate court concerning his own ineffectiveness if that ineffectiveness is raised in a habeas petition.[7]
Finally the petitioner has not alleged nor attempted to demonstrate at the habeas hearing any effect that the alleged conflict of interest may have had on trial counsel's performance on appeal. While it is true that the petitioner need not demonstrate actual prejudice he nevertheless must establish that the actual conflict had some adverse effect on his counsel's representation. Since none was demonstrated or for that matter even suggested the habeas may also be dismissed on these grounds.
 III
With respect to the petitioner's other claims of ineffectiveness the following background facts are helpful. "About 8:45 p.m. on February 12, 1991, the defendant ran up behind Betsy Galan and Wanda Woolfolk on a New Haven street and ordered them to take off their coats. Both refused to comply until the defendant pulled a .38 caliber revolver from his pocket and pointed it at them. Woolfolk quickly removed her coat but Galan resisted. The defendant threatened to pistol whip Galan if she did not comply with his demands. When Galan continued to resist, the defendant turned the gun around and, grasping it by CT Page 13526 the barrel, pressed the butt against Galan's cheek. He then started tapping Galan's face with the butt. As Galan continued to resist, the defendant became angry and began striking her face harder and harder. Upon receiving a particularly forceful blow, Galan surrendered her coat. Thereafter, while pointing his gun at the women, the defendant threw down Woolfolk's coat and ran off with Galan's. The gun was never recovered. Galan, who knew the defendant by sight, furnished his name to the New Haven police and identified his photograph." State v. Mercer,29 Conn. App. 679, 680, (1992).
The petitioner's first claim is that trial counsel failed to impeach the state's witnesses who were the victims' of this assault. A review of the transcript of the trial clearly demonstrates that trial counsel did in fact effectively point out the inconsistencies in the statements that the victims' gave to the police and what they stated at trial. Trial counsel also pointed out other discrepancies. For example trial counsel pointed to the differences in testimony as to the time the robbery took place, whether a third person, Sharad Robinson, was present at the time of the robbery or whether he participated in the robbery, and whether there was a delay in the reporting of the incident. Trial counsel further attempted to discredit Woolfolk's testimony by demonstrating that when the incident was first reported she failed to discuss with the police officer that her coat was taken along with Galen's. He also pointed to the discrepancies in the two victims' testimony as to where they went immediately after the robbery. He further pointed out the statements of the two victims regarding the familial relationship of the two victims to one another were contradictory. In short the petitioner's trial counsel provided a thorough and diligent cross-examination of the victims at trial in an attempt to impeach their credibility. Counsel's performance exceeded the standards set forth in Strickland v. Washington, supra.
The petitioner's next claim is no more convincing than his first claim. The petitioner claims that counsel was ineffective in that he failed to investigate the time of the incident so that the petitioner could present an alibi defense. At the criminal trial counsel established that the time the victims indicated the robbery took place differed by an hour to an hour and one half from the time the police report and testimony indicated. Furthermore trial counsel testified that he did call and discuss with the potential alibi witness, whose name was given to him by the petitioner, any facts that might support the claim of CT Page 13527 petitioner's innocence. That potential alibi witness[8] was unable to provide support for the claim of the petitioner. As to petitioner's claim that trial counsel failed to call witnesses at the criminal trial, no testimony was offered to support this claim at the habeas trial.[9]
For all of the foregoing reasons the petition is dismissed.
Zarella, J.