STATE OF CONNECTICUT *v.* SAMUEL L. GREEN
(13518)

DUPONT, C. J., and FOTI and LAVERY, Js.

Argued June 2—decision released August 22, 1995

*Kenneth W. Simon,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Stephen Preleski,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment following his conviction of robbery in the first degree in violation of General Statutes § 53a-134, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-48, and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). On appeal, the defendant claims the trial court (1) improperly denied the defendant's motion for a speedy trial, (2) instructed the jury incorrectly on an element of assault in the second degree, and (3) should have granted the defendant's motion for judgment of acquittal because the evidence was insufficient to prove assault in the second degree beyond a reasonable doubt. We affirm the judgment of conviction.

The jury could have reasonably found the following facts. On February 5, 1993, a pizza deliveryman was accosted at gunpoint by three men. After demanding money, one of the men struck the victim on the left side of his head with a gun. The victim fell to the ground, and the victim's assailant and the two other men fled with an undetermined amount of money and food. The next day the defendant was arrested by the police after he was positively identified by the victim, and he was arraigned on February 8, 1993.

After several pretrial motions made by the defendant, including a motion for disclosure and motions for bond reductions, voir dire began on September 1, 1993. When it was discovered that the victim, an essential

witness, was temporarily leaving the country for Pakistan, the state filed a motion for a continuance on September 7, 1993.

Even though the state had been in periodic contact with the witness from the beginning of voir dire, he had not indicated his intent to leave for Pakistan until September 7, 1993. That same day, the state served a subpoena on the witness and confirmed that he had a scheduled flight leaving for Pakistan. After attempting alternative means for obtaining the witness' testimony, including beginning trial earlier or deposing the witness prior to his departure, the state successfully moved for a continuance until November 15, 1993, the day of the witness' scheduled return. The defendant had no objection to this motion or to the court's finding of good cause for the continuance.

In October, the state contacted the defendant to inform him that the witness had extended his stay in Pakistan for another month. In response, the defendant moved for a speedy trial pursuant to Practice Book § 956D on October 28, 1993. On November 3, 1993, the court denied the defendant's motion without prejudice and continued the trial until December 15, 1993, the witness' amended scheduled return. On November 5, 1993, the trial court granted the defendant's motion to dismiss the original jury due to the additional delay, and selection of a new jury commenced on December 15, 1993. On January 19, 1994, the defendant was found guilty of all three charges, and, on March 9, 1994, he was sentenced to a total of thirteen years imprisonment.

I

The defendant argues that the trial court improperly denied his statutory right to a speedy trial. The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will

be reversed on appeal only if it is clearly erroneous. *State* v. *Flowers*, 198 Conn. 542, 503 A.2d 1172 (1986). "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980) . . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. *State* v. *Lasher*, 190 Conn. 259, 267, 460 A.2d 970 (1983). *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985)." (Citation omitted; internal quotation marks omitted.) *State* v. *Flowers*, supra, 544.

The sixth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution guarantee the right to a speedy trial. *State* v. *Almgren*, 12 Conn. App. 364, 368, 530 A.2d 1089 (1987). In *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court set forth the guidelines to be applied in determining whether an individual's constitutional right to a speedy trial has been violated. Connecticut, however, has afforded individuals greater rights than those outlined in *Barker* by promulgating specific deadlines for commencing a criminal trial. Practice Book §§ 956B through 956E.

The trial court based its denial of the motion for a speedy trial on the witness' unavailability. The court noted that the witness' unavailability from September 7 until December 15 resulted in excludable time under Practice Book § 956C.[1] The trial court found that the

[1] Under Practice Book § 956B, the state must commence trial within a requisite time period, calculating out any excludable time. Under Practice Book § 956C (b) excludable time includes: "Any period of delay resulting from the absence or unavailability of . . . any essential witness for the prosecution or defense. . . . For purposes of this paragraph, a defendant or any essential witness shall be considered unavailable whenever his where-

state had exercised due diligence in attempting to obtain the witness' testimony, and therefore, the court excluded this time from the running of the speedy trial deadline and denied the motion. The trial court, however, did not need to address this question because by statute and under the *rules of practice*, the motion was not timely.

General Statutes § 54-82m authorizes the judges of the Supreme Court to promulgate rules to provide a procedure to assure a speedy trial.[2] Practice Book § 956D requires that "[i]f the defendant is not brought to trial within the applicable time limit . . . and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice . . . ." Therefore, before the defendant may move for dismissal, he must file a motion for a speedy trial. Furthermore, § 956D provides: "Failure of the defendant to file a motion to dis-

abouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial."

[2] General Statutes § 54-82m provides: "RULES RE SPEEDY TRIAL TO BE ADOPTED BY JUDGES OF SUPERIOR COURT EFFECTIVE JULY 1, 1985. In accordance with the provision of section 51-14, the judges of the superior court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in any information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

miss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules." Because a motion to dismiss is waived unless filed before the commencement of trial and a motion for a speedy trial must precede a motion for dismissal, logically a motion for a speedy trial must also be filed before the commencement of trial in order to be afforded a remedy under the rules.

For the purpose of the speedy trial rules, commencement of trial "means the commencement of the voir dire examination in jury cases and the swearing-in of the first witness in nonjury cases." Practice Book § 956E; see also *State* v. *Reddick*, 224 Conn. 445, 460, 619 A.2d 453 (1993). In this matter, a jury case, the trial was deemed to commence on the day voir dire began, September 1. The defendant filed his motion for a speedy trial on October 28, and, although the jury was subsequently dismissed, under Practice Book § 956E, the trial had commenced on September 1. We conclude, therefore, as a matter of law, that the motion was inappropriate at the time of filing and could not be granted.

The defendant argues that such a conclusion "allows the state to pick one juror and put a case on hold indefinitely until necessary witnesses appear." This argument ignores, however, the fact that a continuance to delay trial will be granted only if good cause is shown. See *State* v. *Haye*, 214 Conn. 476, 483, 572 A.2d 974 (1990); *State* v. *Gordon,* 197 Conn. 413, 424B, 504 A.2d 1020 (1985). This rule places an affirmative duty on the state to make its witnesses available. Its failure to begin trial must be explained before a continuance will be granted. See, e.g., *State* v. *Cleary*, 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985) (denying state's motion for continuance and dismissing charges because state failed to prepare diligently for trial).

Although the defendant is correct in stating that the statutory right to a speedy trial is intended to prevent "purposeful or oppressive" delay; *Pollard* v. *United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957); the statute and rules do not extend the time to file motions for a speedy trial beyond the commencement of trial. General Statutes § 54-82m. Furthermore, the defendant does not argue, nor do the facts support, a "purposeful or oppressive" delay by the state. Regardless, such findings are appropriately addressed in an objection to a motion for a continuance, not in a motion for a speedy trial, once trial commences.

Even if the defendant had moved for a speedy trial after the jury had been dismissed, rather than after the trial had begun and before he requested the jury's dismissal, he would still be incorrect in asserting the right since enough excludable time existed in order to bring the trial within the statutory requirements. In order for a motion for a speedy trial to be proper, it must be filed after the running of the requisite time period for commencing a trial. *State* v. *Charlton*, 30 Conn. App. 359, 363, 620 A.2d 1297 (1993); *State* v. *Ortiz*, 14 Conn. App. 493, 499, 542 A.2d 734 (1988).

Under Practice Book § 956B, the appropriate time frame for bringing an individual to trial after his arrest or arraignment is eight months,[3] excluding any time as allowed under § 956C. Under § 956C (b) excludable time includes "[a]ny period of delay resulting from the absence or unavailability of . . . any essential witness for the prosecution or defense. . . . For purposes

---

[3] Practice Book § 956B (b) provides in relevant part: "The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat., § 54-82c."

of this paragraph, a defendant or any essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." See also *State* v. *Mooney*, 218 Conn. 85, 116–17, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The trial court properly found from the facts that the state exercised due diligence in trying to obtain the presence of the witness for trial. The state had informed the witness of the scheduled trial date and noted his work schedule. When he informed the state of his intention to leave for Pakistan, the state issued a subpoena, confirmed the scheduled flight, and considered alternative means for the introduction of the witness' testimony in his absence. In addition, the state made several telephone calls to Pakistan to secure the witness' return, and they kept the defendant apprised of the situation. In finding that the state had exercised due diligence, the trial court properly excluded the time during which the witness was unavailable, September 7 until December 15, a total of ninety-eight days. If the issue of excludable time had properly been before the trial court, we would conclude its decision to deny the motion for a speedy trial was factually supported and not clearly erroneous. Although that issue was not properly before the court, we nevertheless affirm its denial of the motion because, as a matter of law, that denial was mandated. "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." *Morris* v. *Costa*, 174 Conn. 592, 597–98, 392 A.2d 468 (1978); see *State* v. *Geyer*, 194 Conn. 1, 17, 480 A.2d 489 (1984) (*Shea, J.,* concurring).

II

The defendant next argues that the trial court improperly instructed the jury on an element of assault

in the second degree. Specifically, he argues that the trial court improperly speculated as to evidence relating to the crime while instructing the jury. Because the defendant failed to request an instruction on this issue or take exception to the court's instructions, he can prevail only by satisfying all of the following conditions established in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989): "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

The record is adequate to review the claim, and, the claim is of constitutional magnitude because claims of improper instruction on the essential elements of the crime charged implicate a defendant's due process right to a fair trial. See *State* v. *Lemoine*, 233 Conn. 502, 509, 659 A.2d 1194 (1995); *State* v. *Cobb*, 199 Conn. 322, 326, 507 A.2d 457 (1986).

Review in this case, however, does not support the defendant's position. He has failed to show that a constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The defendant argues that the jury instructions relating to the charge of assault in the second degree[4] "presumes so many facts not in evidence that the jury is required to find the element of dangerous instrument proven beyond a reasonable

[4] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

doubt."[5] Specifically, he argues that the trial court, when instructing the jury, improperly presumed that the gun allegedly used in the crime was metal, made an improper reference to a gun's ability to fire a bullet, and invited the jury to speculate on the gun's weight and size.[6]

"Our standard of review in cases when the defendant claims that the instructions [were deficient] is whether . . . it was reasonably possible that the jury was misled." *State* v. *Wolff*, 29 Conn. App. 524, 530,

---

[5] Under General Statutes § 53a-3 (7), a "dangerous instrument" is defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

[6] The trial court instructed the jury as follows: "The third element is that the defendant caused the injury by means of a dangerous instrument. And our law defines dangerous instrument as any instrument or article which, under the circumstances in which it is used, or is capable—I'm sorry. Under the circumstances in which it is used is capable of causing death or serious physical injury. And serious physical injury is physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health, or serious loss, or the impairment of the function of any bodily organ. Now, I've given you two different definitions. One of physical injury and one of serious physical injury. And there's a potential for confusion, so don't . . . don't despair. I'm going to repeat this at the end and summarize it for you. The physical injury is what actually has to happen. The serious physical injury comes in the definition of what a dangerous instrument is. So, to recapitulate, the state has to have proven beyond a reasonable doubt that [the defendant] had the intent to cause physical injury to [the victim]. That [the defendant] did cause that physical injury, that is, impairment of physical condition, or pain without any particular degree being required. And that [the defendant] did so by using a dangerous weapon. *That is, you'll recall the testimony, of hitting [the victim's] being hit by [the defendant] with a gun that was in his hand. You have to decide— you have to determine beyond a reasonable doubt that the use of a piece of, presumably, metal—if you wish to make that inference, but—but a gun, used, as the testimony indicates that it was used, was capable of causing death or serious physical injury. The fact that a gun might fire a bullet is not enough to qualify it. It's just any other object, that size and weight, whatever you determine that size and weight was, being applied to where the evidence convinces you, if the evidence does, that it was applied to [the victim]'s body."* (Emphasis added.)

616 A.2d 1143 (1992). "A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Lemoine*, supra, 233 Conn. 509.

The defendant does not argue, nor do the facts support, that the jury instructions were deficient or unclear. Rather, he argues that the instructions encouraged the jury to engage in speculation of an essential element of the crime because the trial court improperly permitted the jury to infer that the gun used was metal "despite the utter lack of evidence that the item, if in fact a gun, was made of metal" and because the trial court improperly engaged the jury to determine the weight and size of the gun where no evidence tended to show this fact.

A jury charge should be read as a whole and should not be read in artificial isolation from the overall charge. The test is whether the charge as a whole tended to mislead the jury. *State* v. *Miller*, 36 Conn. App. 506, 511, 651 A.2d 1318, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995). The judge repeatedly and specifically informed the jury that his reference to any evidence was simply for the purpose of illustration and clarification, and that the jury had the ultimate duty to find the facts and to draw any reasonable inferences therefrom.

Furthermore, a trial judge may call attention to the bearing and weight of the evidence. "It is not necessarily error to omit all comment upon the bearing and weight of evidence; and generally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, *within the dis-*

*cretion of the trial judge.''* (Emphasis added; internal quotation marks omitted.) *State* v. *Lemoine,* supra, 233 Conn. 511, quoting *State* v. *Long,* 72 Conn. 39, 43, 43 A. 493 (1899). At no time did the trial judge direct the jury to find certain facts. On the contrary, the trial court clearly and repeatedly instructed the jury that it was ultimately responsible for determining the facts from the evidence.[7]

The defendant also argues that the trial court's reference to the gun's ability to fire a bullet was an assertion not supported by the record. In making this reference, the court was not referring to the gun's operability, but rather, was illustrating that, even if the gun used was operable, this fact would still be insufficient proof of a dangerous instrument. The trial court clearly made no reference to the operability of the gun used in the crime.

The defendant has failed to prove that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

III

The defendant also asserts that the court improperly failed to grant his motion for judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt assault in the second degree. '' 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it

---

[7] The trial court instructed the jury as follows: "My duty is to state to you the rules of law involved in the decision of this case. Your duty is to find the facts. You alone are responsible for determining the facts. . . . Also, your verdict must be based absolutely and solely upon the evidence given to you in the trial of the case. . . . If I do refer to any of the evidence in this charge, it's simply for the purpose of illustration and clarification. And you will please not understand that I intend to emphasize any evidence that I mention, or limit your consideration to that evidence alone.''

in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' [*State* v. *Simino*, 200 Conn. 113, 116–17, 509 A.2d 1039 (1986)]." *State* v. *Summerville*, 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988).

"In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985). "Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing. *State* v. *Osman*, 218 Conn. 432, 437, 589 A.2d 127 (1991)." *State* v. *Gray*, 221 Conn. 713, 720, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). Furthermore, a fact finder may adopt those inferences reasonably and logically established by the evidence. *State* v. *Liscio*, 9 Conn. App. 121, 127, 516 A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987).

The defendant takes issue specifically with the jury's finding of "dangerous instrument," namely that he "used or attempted or threatened to be used [an instrument in a manner] capable of causing death or serious physical injury." General Statutes § 53a-3 (7). The defendant argues that the jury could not have inferred that the object used to strike the victim was dangerous because the victim admitted that he did not know if the gun was real, suffered only pain from the blow, failed to seek medical attention, and had no visible marks.

Under § 53a-3 (7), in order for an instrument to be considered dangerous, it need only be used in a manner capable of causing serious injury under the circum-

stances. Hence, the analysis focuses on the actual circumstances in which the instrument is used in order to consider the instrument's potential to cause harm. *State* v. *Jones*, 173 Conn. 91, 97, 376 A.2d 1077 (1977). The statute neither restricts the inquiry to the exact manner in which the object was actually used, nor requires any resulting serious physical injury. Id. The facts and circumstances need show only that the general way in which the object was used could potentially have resulted in serious physical injury.

Under the circumstances of this case, the jury could have reasonably found that the gun used in the crime was a "dangerous instrument." The victim testified that he was struck on the head with a gun and fell, at least in part, as a result of the blow. These facts could lead a jury reasonably to believe that the instrument used in the course of the robbery and in the manner described had the potential to cause death or serious bodily injury. See, e.g., *State* v. *Jones*, supra, 173 Conn. 96 (affirming jury's finding of dangerous instrument where victim struck with hockey stick); *State* v. *Mercer*, 29 Conn. App. 679, 682, 617 A.2d 916 (1992), cert. denied, 225 Conn. 902, 621 A.2d 285 (1993) (tapping victim's face progressively harder with what appeared to be gun sufficient although gun was never recovered).

A jury could also reasonably conclude from the facts that the defendant intended to cause physical injury to the victim and that such injury resulted. The victim testified that the defendant demanded his money and struck him on the head with a gun and that he experienced pain as a result. Construing the evidence in the light most favorable to sustaining the jury's verdict, we find that the jury could reasonably have concluded that the evidence established guilt beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.