STATE OF CONNECTICUT *v.* JAMES A. MCCAHILL
(SC 16817)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

438

Argued January 9—officially released August 19, 2003

*Jon L. Schoenhorn*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Conrad Ost Seifert* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. The principal issue in this appeal is whether the trial court properly denied the motion to dismiss the information filed by the defendant, James A. McCahill,

after he was not brought to trial within thirty days after he filed a motion for a speedy trial pursuant to General Statutes § 54-82m[1] and Practice Book § 43-41.[2] The defendant appeals[3] from the judgment of conviction of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2)[4] and sexual assault in the first

[1] General Statutes § 54-82m provides: "In accordance with the provisions of section 51-14, the judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

[2] Practice Book § 43-41 provides: "If the defendant is not brought to trial within the applicable time limit set forth in Sections 43-39 and 43-40, and, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. For the purpose of this section, good cause consists of any one of the reasons for delay set forth in Section 43-40. When good cause for delay exists, the trial shall commence as soon as is reasonably possible. Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

[3] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

degree in violation of General Statutes § 53a-70 (a) (1).[5] The defendant contends that the trial court improperly concluded that the misfilings of his motion for a speedy trial constituted "good cause" for the state's failure to commence his trial within the time frame required by § 54-82m and pursuant to Practice Book § 43-40.[6] We agree and, accordingly, we reverse the judgment of the trial court and remand the case with direction to render judgment of dismissal.

The record reveals the following facts and procedural history that guide our resolution of this appeal. On or about the evening of January 22, 1999, the defendant allegedly broke into the condominium of his former girlfriend and physically and sexually assaulted her. The defendant was arrested that same day and, on January 25, 1999, the state filed a short form information. The state thereafter filed a substitute long form information charging the defendant with the crimes of sexual assault in the first degree and burglary in the first degree. The defendant first appeared before the court on January 25, 1999. On August 5, 1999, the case was placed on the trial list.

On January 23, 2001, the defendant filed a motion for a speedy trial, which set forth the docket number in the present case (part A) and the docket number in a related case (part B), although the two cases were never consolidated, with the docket number of the part A case listed first. Two copies of the motion were filed with the clerk's office, one for each of the defendant's

[5] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

[6] Practice Book § 43-40 provides in relevant part: "The following periods of time shall be excluded in computing the time within which the trial of a defendant charged by information with a criminal offense must commence pursuant to Section 43-39 . . . .

"(10) Other periods of delay occasioned by exceptional circumstances."

files, and two copies were delivered to the state's attorney's office. The motion contained the requisite certification of service certifying that a copy of the motion had been mailed or hand delivered to the state's attorney on January 23, 2001. On February 26, 2001, the defendant filed a motion to dismiss the information in both cases because his trial had not commenced within the thirty days following the filing of his motion for a speedy trial, as required under Practice Book § 43-41.[7]

On February 27, 2001, the trial court, *Byrne, J.*, held a hearing on the defendant's motion for dismissal, at which the court heard evidence and oral argument from the defendant, the state and an advocate for the victim. On March 30, 2001, based on a review of § 54-82m and the statute's legislative background, and in the interest of "fundamental fairness," the trial court denied the defendant's motion to dismiss.[8]

The defendant subsequently was tried to a jury and convicted on the sexual assault and burglary counts. Following his conviction, the trial court, *Hon. Bernard D. Gaffney*, judge trial referee, denied the defendant's posttrial motions for judgment of acquittal, arrest of judgment and a new trial, and, exercising the powers of the Superior Court, rendered judgment of guilty in accordance with the jury's verdict. The defendant was sentenced to two concurrent twelve year terms of imprisonment, execution suspended after six years, followed by a six year period of special parole. This appeal followed.

The defendant contends on appeal that the trial court improperly: (1) denied his motion to dismiss the infor-

---

[7] In the present appeal, the defendant challenges only his conviction in the part A case, relating to the sexual assault and burglary offenses.

[8] The defendant filed an interlocutory appeal from the trial court's denial of his motion to dismiss with the Appellate Court, which dismissed the appeal for lack of a final judgment. The defendant then sought an emergency certification to appeal from the Chief Justice pursuant to General Statutes § 52-265a, which was denied.

mation after he was not brought to trial within thirty days following the filing of his motion for a speedy trial; (2) permitted the state to present constancy of accusation evidence from a police officer not specifically identified by the victim and allowed the officer to present detailed testimony concerning the statement that the victim had given the police; and (3) found that there was sufficient evidence presented at trial to support the jury's verdict finding the defendant guilty of burglary in the first degree. Because we agree with his first claim, we do not reach the remaining claims.

The following additional facts are necessary to our resolution of the speedy trial issue. At the hearing on the defendant's motion to dismiss, the defendant and the state stipulated to the following relevant facts. The copies of the defendant's motion for a speedy trial filed with the clerk's office and at the state's attorney's office were misfiled.[9] Specifically, the clerk's office failed to follow several of its mandatory procedures when it handled the defendant's speedy trial motion. These lapses included: placing both copies of the motion in the file of the part B case and not in the file of the part A case; failing to notify the clerk handling the part A case of the filing of the motion for a speedy trial; failing to notify the criminal case flow coordinator of the filing of the motion for a speedy trial in both the part A and part B cases; failing to notify the state's attorney's office of the filing of the defendant's motion for a speedy trial; and failing to notify the criminal presiding judge of the filing of the motion for a speedy trial. As a result of these failures, the filing of the motion in the present case was not brought to the attention of those who

[9] Although the state asserts, for the first time on appeal, that because of the form of the defendant's motion, the defendant comes to this appeal with "unclean" hands, it is noteworthy that the state does not claim that the misfilings of the motion by the state's attorney and the clerk's office were caused by any deficiency in the form of the defendant's motion.

customarily would respond to it: the presiding criminal judge, the part A criminal clerk, the criminal caseflow coordinator and the state's attorney.

During the course of the hearing on the defendant's motion to dismiss, the state characterized the clerk's mistake as having been the result of "ignorance or incompetence or apathy . . . ." The state further argued that this ignorance, incompetence or apathy led to an "utter and complete breakdown" in the clerk's office and that "the statutory obligation [was] on the clerk's office." The state also conceded that the state's attorney's office "share[d] the blame in this as well. [The] office . . . received those motions and did the same thing, stuffed them in the part B file." The trial court denied the defendant's motion to dismiss because it concluded that § 54-82m provided the judges of the Superior Court with the discretion to adopt speedy trial rules and that, pursuant to those rules, the misfiling of the speedy trial motion in both the clerk's office and the state's attorney's office constituted "exceptional circumstances" under Practice Book § 43-40; see footnote 6 of this opinion; which, in turn, constituted "good cause" for the denial of the defendant's motion to dismiss under Practice Book § 43-41. See footnote 2 of this opinion.

On appeal, the defendant claims that, once the one year period for commencing his trial had passed, and he thereafter filed a motion for a speedy trial, the trial court was required to grant his motion to dismiss with prejudice because his trial did not commence within thirty days of the filing of his speedy trial motion. The defendant contends that there are no time exclusions from the thirty day period under either General Statutes § 54-82m or Practice Book § 43-41, which was promulgated pursuant to § 54-82m, and that, absent limited extraordinary circumstances that suspend the running of the thirty day period, which, he claims, do not include

clerical misfeasance or negligence caused by inattention, the trial court improperly denied his motion to dismiss.

Although the state has conceded that its failure to timely commence the action against the defendant resulted from "ignorance or incompetence or apathy," it contends that the circumstances of this case fall within the "good cause" exception, defined by Practice Book § 43-40 (10) as a "delay occasioned by exceptional circumstances," which permits a defendant to be brought to trial after the thirty day period has expired. Specifically, the state asserts that, because both the individuals of the clerk's office and the state's attorney's office who accepted the defendant's speedy trial motion failed to notify anyone of the motion or even to place it in the correct file, their negligence constitutes good cause to excuse the delay.[10] In other words, the state contends that we should accept administrative incompetence as a good cause exception to the statutory requirement of a speedy trial. We disagree. Administrative incompetence, whether founded in negligence, recklessness or a serious dereliction of duty, does not constitute "good cause" or "exceptional circumstances" under the pertinent statutory and Practice Book provisions.

We begin by addressing a preliminary issue as to the applicable standard of review regarding this issue. The defendant contends that, because there are no undisputed facts and the trial court based its denial of the defendant's motion to dismiss on its interpretation of § 54-82m and Practice Book §§ 43-40 and 43-41, our review is plenary. The state counters that whether the defendant had been denied his right to a speedy trial

---

[10] It is noteworthy that the state does not claim that the defendant's notice was defective, or "not clear enough to put the [s]tate on notice that he was requesting a speedy trial in this case." *People* v. *Milsap*, 261 Ill. App. 3d 827, 831, 635 N.E.2d 1043 (1994).

was a finding of fact, which should be reversed on appeal only if it was clearly erroneous. We agree with the defendant.

The state relies on the following cases as supporting the application of a "clearly erroneous" standard of review in appeals concerning statutory speedy trial claims. *State* v. *Rodriguez*, 47 Conn. App. 91, 98, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998); *State* v. *Silva*, 43 Conn. App. 488, 496, 684 A.2d 725 (1996), cert. denied, 239 Conn. 956, 688 A.2d 329 (1997); and *State* v. *Green*, 38 Conn. App. 868, 870–71, 663 A.2d 1085 (1995). Each of these cases, however, involved a dispute over the calculation of "excludable time"—the amount of time that properly is excluded from the computation of the time within which a defendant must be brought to trial. *State* v. *Silva*, supra, 496, involved a defendant's claim that a delay between his arrest and the commencement of his trial should not have been excluded because the delay was attributable to a lack of diligence on the part of the state's attorney. *State* v. *Rodriguez*, supra, 98, involved a claim concerning excludable time also allegedly caused by a lack of diligence on the part of the state's attorney as well as that prosecutor's trial schedule. *State* v. *Green*, supra, 870, involved a dispute over the state's request for a continuance to allow for a key prosecution witness' return from an overseas trip. The trial court in each of those cases necessarily had to calculate the amount of excludable time based on factual findings such as whether the state had exercised due diligence in obtaining the testimony of a certain witness. See, e.g., id., 871–72. The Appellate Court's statement in *Green* that "[t]he determination of whether a defendant has been denied his right to a speedy trial is a finding of fact"; id., 870; must be read in the context of a case in which factual findings necessarily were in dispute.

In the present case, by contrast, there is no factual dispute and the trial court's decision denying the defendant's motion to dismiss resolved questions of law involving the interpretation of § 54-82m and Practice Book §§ 43-40 and 43-41—whether the misfiling of the defendant's motion constituted "exceptional circumstances" and, therefore, "good cause" for the failure to begin the defendant's trial within thirty days after the filing of his speedy trial motion, and whether dismissal of the information therefore was not required. Accordingly, because these issues involve questions of statutory interpretation, it is well established that our review is plenary. *West Haven* v. *Norback*, 263 Conn. 155, 162, 819 A.2d 235 (2003); *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). Similarly, we have determined that our rules of statutory construction apply with equal force to interpretations of the rules of practice. *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 438–39, 797 A.2d 1081 (2002). Therefore, we turn to the merits of the claim unencumbered by any deferential standard of review.

We begin with a brief overview of the speedy trial statute and supporting Practice Book scheme, and the manner in which we have applied them recently. The speedy trial statute requires the judges of the Superior Court to adopt rules that are necessary "to assure a speedy trial for any person charged with a criminal offense . . . . Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information . . . or from the date of the arrest, whichever is later . . . and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any

time after such time limit has passed, the information
. . . shall be dismissed. Such rules shall include provi-
sions to identify periods of delay caused by the action
of the defendant, or the defendant's inability to stand
trial, to be excluded in computing the time limits set
forth in subdivision (1)." General Statutes § 54-82m.

In accordance with the mandates of § 54-82m, Prac-
tice Book §§ 43-39, 43-40 and 43-41 prescribe the man-
ner in which to identify excusable periods of delay.
Practice Book § 43-39 (c) sets forth the general rule,
and provides in relevant part: "Except as otherwise
provided herein and in Section 43-40, the trial of a defen-
dant charged with a criminal offense . . . shall com-
mence within twelve months from the filing of the
information or from the date of the arrest, whichever
is later." Practice Book § 43-40 then sets forth ten cir-
cumstances constituting those "periods of time [that]
shall be excluded in computing the [twelve months]
within which the trial of a defendant . . . must com-
mence pursuant to Section 43-39 . . . ." The first nine
delineate specific circumstances; the tenth provides
more generally for "[o]ther periods of delay occasioned
by *exceptional circumstances.*" (Emphasis added.)
Practice Book § 43-40 (10). Practice Book § 43-41 spe-
cifically addresses the thirty day period after the filing
of the speedy trial motion, providing in relevant part:
"If the defendant is not brought to trial within the appli-
cable time limit set forth in Sections 43-39 and 43-40,
and, absent *good cause* shown, a trial is not commenced
within thirty days of the filing of a motion for speedy
trial by the defendant at any time after such time limit
has passed, the information shall be dismissed with
prejudice, on motion of the defendant filed after the
expiration of such thirty day period. For the purpose
of this section, *good cause* consists of any one of the
reasons for delay set forth in Section 43-40. . . ."
(Emphasis added.)

Although the term "exceptional circumstances" is not defined in the provisions of the Practice Book, our case law addressing the speedy trial statute sheds some light on its meaning. In *State* v. *Brown,* 242 Conn. 389, 402, 699 A.2d 943 (1997), we considered the application of the speedy trial rule in the context of a delay resulting from the unavailability of the defendant's counsel until the conclusion of another trial. At that time, the rules of practice prescribed good cause delay exceptions for the period of time prior to the filing of a motion for speedy trial, including "exceptional circumstances"; see Practice Book, 1993, § 956C (j); but did not prescribe comparable exceptions for the thirty day period after the motion had been filed. We noted in *Brown* that "under the literal language of the statute . . . [a] defendant must be brought to trial within [twelve][11] months, plus any excludable time calculated under the rules promulgated by the judges of the Superior Court, of his arrest or the filing of an information, whichever is later. Once that time has passed, he may then file a motion for a speedy trial. If thirty days passes without his trial commencing, he may then file a motion to dismiss, which must be granted with prejudice. The court has the authority to exclude certain periods of time in calculating when the . . . speedy trial time . . . expires, but there is no corresponding language authorizing any extension of the thirty day period that begins to run upon the filing of a speedy trial motion following the expiration of that [twelve] month period. Indeed, the specific direction in the last sentence of § 54-82m to the judges, in their rule-making capacity, 'to identify periods . . . to be excluded in computing the time limits set forth in subdivision (1)' . . . without a corres-

[11] In *State* v. *Brown,* supra, 242 Conn. 404, the defendant was incarcerated while awaiting trial and the court therein was faced with an eight month period within which the defendant was to be brought to trial, rather than the twelve month period applicable to a defendant who, as in the present case, is not incarcerated.

ponding direction to exclude any time periods to be excluded in computing the thirty day period under subdivision (2), precludes the inference, *at least in the ordinary case*, that the court has such authority to extend the thirty day period." (Emphasis added.) *State* v. *Brown*, supra, 404–405.

In *Brown*, we concluded nonetheless that, although there was no direction authorizing any extension of the thirty day period in § 54-82m or the Practice Book provisions then applicable, "where the reason for the failure to commence the defendant's trial within thirty days of his speedy trial motion filed under [Practice Book, 1993, § 956D, now § 43-41] is that his attorney is then engaged in another criminal trial, the court has the inherent power to suspend the running of that period for a reasonable time until the attorney becomes available, and that neither the statute nor the rules of practice precludes the exercise of that power. . . . Despite the categorical nature of the language of the statute and the rules of practice, we conclude that [the language] would not require such a result. Thus, if a literal application of the language of the statute would generate a clash between the defendant's rights to a speedy trial and to adequate representation, the literal application must yield to the power of the court to make a reasonable accommodation between those two rights, as did the trial court in this case." Id., 405–406.

Subsequently, in *State* v. *Ortiz*, 252 Conn. 533, 567, 747 A.2d 487 (2000), we considered the application of the speedy trial rule in the context of a delay wherein the defendant was joined for trial with a codefendant whose counsel was unavailable for trial and no severance motion had been granted. By 1996, the time of the trial in *Ortiz*, the rules of practice had been amended to extend the enumerated "good cause" exceptions to the thirty day period after the filing of the motion for speedy trial. See Practice Book § 43-41, formerly

§ 956D. This court determined, in reliance on our reasoning in *Brown*, that the trial court properly had suspended the running of the thirty day period to include such circumstances. *State* v. *Ortiz*, supra, 568. In upholding the trial court, we treated the good cause exception as a narrow accommodation necessary to accomplish a workable result. Id., 567–68.

Put another way, our case law reflects that the good cause exception recognizes the fact that, on *rare* occasions, there will arise a need to accommodate extreme or unusual circumstances *out of necessity*. As we noted in *Brown*, in our reference to the construction by the Second Circuit Court of Appeals of "similarly categorical language" of the speedy trial plan of the United States District Court for the District of Connecticut: "[T]here was an implied *necessity exception* to language requiring the commencement of a retrial of a criminal defendant 'not later than [sixty] days after the finality of' the order for a new trial. *United States* v. *Bubar*, 567 F.2d 192, 206 n.20 [(2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977)]." (Emphasis added.) *State* v. *Brown*, supra, 242 Conn. 408–409. In the present case, we need not expand good cause to encompass the state's own negligence to achieve a workable result under the rule. Moreover, the competing concerns of adequately protecting the defendant's constitutional rights are not at issue.

What the state loses sight of in this case is that the "good cause" exception is meant to be just that: an *exception* to the otherwise strict statutory and Practice Book requirement that if "a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant . . . the information . . . *shall* be dismissed. . . ." (Emphasis added.) General Statutes § 54-82m (2); see Practice Book § 43-41. If the state is correct in its assertion that institutional incompetence may fall within the exceptional circumstances excep-

tion under good cause, then a defendant seeking to avail himself of these mandatory provisions would have to demonstrate recklessness or actual malice by the state in order to enforce his statutory speedy trial rights. Such a result would be untenable and contrary to the legislative intent. The speedy trial rule, as set forth by § 54-82m and Practice Book § 43-39 et seq., was intended to ensure institutional compliance, not to excuse institutional incompetence.

A review of the legislative history reflects that the legislature enacted the speedy trial rule to ensure the efficient adjudication of criminal charges for the benefit of the defendant as well as for Connecticut's citizens. See 25 S. Proc., Pt. 4, 1982 Sess., pp. 1240–42, remarks of Senator Howard T. Owens, Jr. Indeed, the history reflects concerns that defendants should not languish in prison for years awaiting trial,[12] nor should the interests of the state and its citizens be jeopardized by the risk that, as cases lay dormant, witnesses may disappear or lose their ability to recall events. See id. Therefore, the rule will tolerate only legitimate justifications for a delay in the period of twelve months between arraignment and the vesting of the statutory right to a speedy trial. See 25 H.R. Proc., Pt. 18, 1982 Sess., pp. 5762–63, remarks of Representative Richard D. Tulisano.

When the legislature amended the bill underlying the speedy trial rule to require that defendants affirmatively trigger the dismissal provision of the statute by moving for a speedy trial at the end of the twelve month period, it did so with the intent that the defendant's motion would alert both the court and the state that the clock was running and that, to avoid dismissal of the charges,

---

[12] Senator Owens cited the example of a defendant who "was in jail for a period of twenty-five months, being held on a murder charge and no other charges against him; [he] subsequently [was] tried after twenty-five months and acquitted on the charges and of course he had no recourse because he couldn't make bail under the circumstances." 25 S. Proc., supra, p. 1240.

the defendant would have to be afforded a trial within thirty days. See id., pp. 5768–70, remarks of Representative Christopher Shays and Representative Robert G. Jaekle; id., p. 5806, remarks of Representative Tulisano. The legislature recognized that institutional negligence might occur during the twelve month period, and that the defendant's speedy trial motion would remind the state that it must commence the trial within thirty days or face a dismissal. See id., pp. 5769–70, remarks of Representative Jaekle.[13] In other words, the motion for a speedy trial is supposed to be the state's "wake up call." It is intended to "[give] the state another crack from preventing that individual from being set free." Id., p. 5768, remarks of Representative Shays. It is not a signal that *further* negligence will be tolerated. Because of the competing and vital interests of all parties, the procedural safeguards are of the utmost importance. Indeed, as the state acknowledges in its brief to this court, the procedures associated with speedy trial motions are " 'hot potatoes' to be afforded a heightened degree of attention and importance when received by a clerk." In light of this history, the state's claim that negligent case management will suffice as an exception to the speedy trial rule is dubious, at best.

---

[13] Representative Jaekle stated: "In order to prevent [a] defendant's being released because the [s]tate . . . *could not comply* with the [twelve] month deadlines, *or worse yet, some prosecutor has not properly diaried or scheduled a trial,* the case cannot be dismissed until the [twelve] month period expires and the defendant makes a motion that the trial, indeed [be] commenced. . . . I look at this as an important safeguard in case . . . some prosecutor has forgotten the . . . deadline. This motion will be a reminder . . . and the state will have [thirty] days to put its case together . . . ." (Emphasis added.) 25 H.R. Proc., supra, pp. 5769–70.

During the legislative proceedings on the amendment to the bill, the time periods discussed within which a defendant was to be brought to trial were twelve months for incarcerated defendants and eighteen months for nonincarcerated defendants. See General Statutes § 54-82*l*. The legislature delayed for two years the implementation of the current, shorter time frames of eight and twelve months, respectively, as set forth in § 54-82m, that are applicable in the present case.

Therefore, consistent with the legislature's intent to advance criminal trials in a speedy and efficient manner, we conclude that institutional negligence does not constitute good cause. "[F]or us to hold that such constitutes an exceptional circumstance would only exacerbate society's myriad problems with crime, criminals and criminal justice, for delay only breeds more delay. To put our seal of approval on the excuses the district attorney gave in this cause, as to why the [criminal defendant's] cause should be continued, would amount not only to thwarting the intent of the Legislature in its enactment of the Speedy Trial Act, and would undermine the effectiveness of the Act, the purpose of which is to ensure that prosecutorial delay will not thwart the prompt trial of criminal cases." *Santibanez* v. *State*, 717 S.W.2d 326, 331 (Tex. Crim. App. 1986) (delay caused by overburdened district attorney's office not "exceptional circumstance").

The judgment is reversed and the case is remanded with direction to render judgment dismissing the information.

In this opinion SULLIVAN, C. J., and NORCOTT and ZARELLA, Js., concurred.

VERTEFEUILLE, J., dissenting. I agree with the majority's conclusion that administrative negligence generally does not constitute "good cause" for the state's failure to bring a defendant to trial within the thirty day period following his filing of a motion for a speedy trial. I believe, however, that we must address *the effect* of that incompetence in the present case, namely, that the defendant, James A. McCahill, was not brought to trial because the court personnel who are charged with management of criminal cases had no actual notice of his request for a speedy trial. I conclude that the absence of such notice constitutes good cause

for the failure to bring the defendant to trial. Accordingly, I dissent.

The plain language of General Statutes § 54-82m[1] directs the judges of the Superior Court to adopt the procedural rules necessary "to assure a speedy trial for any person charged with a criminal offense . . . ." Section 54-82m (2) further mandates that the rules require the filing of a motion for a speedy trial and the allowance of an additional thirty days for trial to begin before the information can be dismissed. Thus, unlike the speedy trial statutes in many other states, our statute specifically requires the filing of a motion for speedy trial and a thirty day period within which the defendant can be brought to trial before the information can be dismissed.[2]

The significance of our requirement of a motion for a speedy trial is revealed in the legislative history of § 54-82m. The provision requiring a motion for a speedy trial and a thirty day period thereafter for trial to begin was adopted by amendment during the floor debate in the House of Representatives on the bill underlying § 54-82m. As originally proposed, the bill simply mandated the dismissal of an information on motion by the

---

[1] For the full text of § 54-82m, see footnote 1 of the majority opinion.

[2] We note that state speedy trial statutes generally appear to be of two types. The first type does not require that the defendant move the court for a speedy trial. Instead, if the defendant is not brought to trial within a specified period of time, the defendant moves the court for a dismissal of the charges or the charges are dismissed automatically. Under these statutory schemes, the state then has the burden of demonstrating that the reason or reasons for delay in bringing the defendant to trial fall within certain enumerated exceptions to the established time frame. See, e.g., 725 Ill. Comp. Stat. Ann. § 5/103-5 (West 2003); Neb. Rev. Stat. §§ 29-1207 and 29-1208 (1995); N.Y. Crim. Proc. Law §§ 30.30 and 170.30 (McKinney 2003). The second type of speedy trial statute is the type we have here in Connecticut. In these statutes, in order to obtain a dismissal of the charges, the defendant must first notify the court of his desire for a speedy trial by moving or making a demand for a speedy trial. See also Mass. Gen. Laws. Ann. c. 212, § 29 (Lexis 1999); Mo. Rev. Stat. § 545.780 (2000).

defendant after the expiration of the time limit in the bill without trial having started. Substitute Senate Bill No. 17. The purpose of the amendment to the proposed bill was to protect against dismissal of the information based on oversight or negligence by requiring the filing of a motion for a speedy trial and an additional thirty days thereafter within which the trial could begin. "[The amendment] says, once you reach the [twelve] months that they're incarcerated or the [eighteen] months[3] if they're not incarcerated, the defendant has to petition the court and the court has another [thirty] days to commence the trial before that individual could be let go. *It gives the state another crack from preventing that individual from being set free.*" (Emphasis added.) 25 H.R. Proc., Pt. 18, 1982 Sess., p. 5768, remarks of Representative Christopher Shays. Additionally, in support of the amendment, Representative Robert G. Jaekle stated: "*I think the most important part of this amendment is the trigger mechanism.* The file copy indicates that if somebody's trial is not commenced within either [twelve] or [eighteen] months of the date of arrest, that upon their motion, the case will be dismissed. Now [twelve] and [eighteen] months, I know it sounds like a long period of time to some. In our court system, that is a speedy trial. In order to prevent [defendants] being released because the [s]tate . . . could not comply with the [twelve] and [eighteen] month deadlines, or worse yet, *some prosecutor has not properly diaried or scheduled a trial,* the case cannot be dismissed until the [twelve] or [eighteen] month period expires and

---

[3] As adopted, the speedy trial statute, General Statutes §§ 54-82*l* and 54-82m, anticipated an incremental change in the applicable time periods in which a defendant was to be brought to trial. Section 54-82*l* was to be effective July 1, 1983, and included time periods of eighteen months for nonincarcerated defendants and twelve months for incarcerated defendants. Section 54-82m was to be effective July 1, 1985, and set these time periods as twelve months and eight months, respectively. The delayed implementation of the shorter time frame allowed the judicial system to adjust to and manage the costs and other requirements of increased efficiency.

the defendant makes a motion that the trial, indeed [be] commenced.

"At that point the state has [thirty] days to commence the trial and therefore prevent the case from being dismissed. *I look at this as an important safeguard in case the [s]tate . . . some prosecutor has forgotten the [twelve] or [eighteen] month deadline. This motion will be a reminder, aha, I forgot, and the state will have [thirty] days to put its case together and prevent possibly a guilty individual from being set free on unfortunately, a technicality. . . . [E]verybody would have notice of the official motion at that point . . . .*" (Emphasis added.) Id., pp. 5769–70. The legislative purpose in requiring the filing of a motion for a speedy trial and an additional thirty days thereafter for trial to begin could not be more clear: the information was not to be dismissed until the defendant gave notice of his demand for a speedy trial and there was one final opportunity for the state to bring the defendant to trial.

The good cause exception to the failure to bring a defendant to trial within thirty days after the filing of a speedy trial motion is found in Practice Book § 43-41,[4] which provides that "good cause consists of any one of the reasons for delay set forth in Section 43-40. . . ." Practice Book § 43-40 enumerates several criteria to be excluded for purposes of calculating speedy trial time; the last is "periods of delay occasioned by exceptional circumstances." Practice Book § 43-40 (10). As a result of these two Practice Book provisions, "exceptional circumstances" are "good cause" for the failure to commence trial within the thirty days following the defendant's filing of a motion for a speedy trial.

I would conclude that the circumstances in the present case were exceptional within the meaning of § 43-

---

[4] For the full text of Practice Book § 43-41, see footnote 2 of the majority opinion.

40 (10) and, therefore, good cause existed under § 43-41 for the failure to bring the defendant to trial within the applicable thirty day period. The good cause, quite simply, was the fact that court personnel with case management responsibilities had no knowledge that the motion had been filed.[5] The consequence of the misfiling of the defendant's motion for a speedy trial in the clerk's office was that none of the persons who normally would respond to the defendant's demand by scheduling the trial—the presiding criminal judge, the part A criminal clerk, or the criminal case flow coordinator—was aware of the need to do so. Consequently, the legislative purpose in requiring the filing of the motion—to provide one last chance for the defendant to be put on trial—was not realized. As a result of the misfiling, the state and the court were not given "a reminder" as Representative Jaekle wanted; 25 H.R. Proc., supra, p. 5770; or "another crack," as Representative Shays described it, at putting the defendant on trial.[6] Id., p. 5768.

---

[5] I focus solely on the misfiling of the speedy trial motion in the clerk's office and its consequence for criminal case management personnel. In accordance with the Rules of Professional Conduct, the actions of the nonlawyers working in the prosecutor's office are the responsibility of the state's attorney. Rule 5.3 of the Rules of Professional Conduct provides in relevant part: "With respect to a nonlawyer employed or retained by or associated with a lawyer . . . (2) A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that person's conduct is compatible with the professional obligations of the lawyer . . . ." The state's attorney's office has rightfully accepted responsibility for the lapse of its staff person.

[6] I further disagree with the majority's unduly restrictive interpretation of the good cause requirement in Practice Book § 43-41. The majority relies largely on *State* v. *Brown*, 242 Conn. 389, 404–405, 699 A.2d 943 (1997), in concluding that there must be a showing of "necessity" for good cause. *Brown* was decided *prior* to the time that Practice Book § 43-41 provided a good cause exception and therefore offers no guidance as to the proper interpretation of good cause. In *Brown*, this court found an *implied* necessity exception in the speedy trial rules of practice because there was no explicit good cause exception at the time. See id., 407.

My conclusion is supported by case law in other jurisdictions interpreting similar provisions of other state speedy trial rules or statutes. The Iowa Supreme Court recently interpreted the good cause provision of its speedy trial rule in *State* v. *Miller*, 637 N.W.2d 201 (2001). "We have repeatedly said that, under our rule, good cause focuses on only one factor: the reason for the delay." (Internal quotation marks omitted.) Id., 205. "[T]he question is not whether the delay was great or small but whether the reason given justifies departure from the rule at all." Id.

In the present case, the reason for the delay was that both the court and the state were unaware of the need to begin the defendant's trial. I find it difficult to imagine a more reasonable justification for failing to respond to a speedy trial demand than ignorance of the demand itself.

The Illinois Appellate Court recently concluded that criminal charges should not be dismissed in a case where the speedy trial demand failed to give *actual* notice to the state of the defendant's demand. In *People* v. *Milsap*, 261 Ill. App. 3d 827, 829, 635 N.E.2d 1043 (1994), the defendant submitted a speedy trial demand under a caption that read " 'Demand For Final Disposition.' " The defendant filed this demand "among a sheaf of papers," the other pages of which referred to an unrelated case involving the defendant. Id. The demand also failed to set forth certain information required under the Illinois rules of practice.

The Illinois Appellate Court began its analysis by noting that "[s]peedy trial issues are to be determined so as to give effect to the legislative intent, and not by a mechanical application of the statutory language." Id., 830. The same court previously had held that "speedy trial provisions impose a burden on [a] defendant to file a demand sufficient to put the State's Attorney on

notice that the defendant is invoking his right to a speedy trial under the statute." Id., 831, citing *People* v. *Ground,* 257 Ill. App. 3d 956, 959–60, 629 N.E.2d 783 (1994). The Illinois Appellate Court in *Milsap* reversed the trial court's judgment dismissing the charges, concluding that the defendant's demand "was not clear and unequivocal . . . . [H]is request was not clear enough to put the [s]tate on notice that he was requesting a speedy trial in this case. *The [s]tate is entitled to know when the speedy trial clock has begun to run. . . . The [s]tate here did not have actual notice that a speedy trial request had been made . . . .*" (Citations omitted; emphasis added.) *People* v. *Milsap,* supra, 261 Ill. App. 3d 831–32.

This court also must interpret the speedy trial provisions of our statutes, and the rules of practice adopted pursuant thereto, so as to give effect to the legislative intent. The clear legislative intent of our speedy trial statute was to require a defendant to give notice of his demand for a speedy trial and to provide one final opportunity for him to be brought to trial. In the present case, the court personnel who had the responsibility to schedule the defendant's trial never received actual notice of this critically important demand. I therefore disagree with the result of the majority's reasoning, which is that court personnel who were unaware of the defendant's speedy trial demand nevertheless are responsible for failing to respond to it, with the result that a defendant convicted of two serious crimes must be set free.

Accordingly, I respectfully dissent.